UNITED STATES of America, Plaintiff-Appellee,

v.

James Edward SMITH, Defendant-Appellant.

No. 80–7449.

United States Court of Appeals, Fifth Circuit.
Unit B

June 30, 1981.

---

Stanley M. Baum, Atlanta, Ga. (Court-appointed), for defendant-appellant.

William S. Sutton, Janet F. King, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before HILL, FAY and HENDERSON, Circuit Judges.

FAY, Circuit Judge:

Appellant was convicted of possession with intent to distribute the controlled substances cocaine hydrochloride and methaqualone, in violation of 21 U.S.C. § 841(a)(1). He appeals that conviction on the sole ground that the drugs were illegal-

ly seized in violation of his Fourth Amendment rights and, therefore, should have been suppressed. We conclude that the evidence should not be suppressed and, accordingly, we affirm the conviction.

## THE FACTS

On January 16, 1980, appellant, James Edward Smith, was travelling from Fort Lauderdale, Florida to Detroit, Michigan via Atlanta, Georgia. His flight to Atlanta was being monitored by Special Agent Mathewson of the Drug Enforcement Administration (DEA) and Detective Burkhalter of the Atlanta Police Department as part of their routine surveillance for drug traffickers. The Miami-Fort Lauderdale area is known to DEA agents as the most significant source of cocaine in the United States.

For reasons that are unclear to us, the agents observed and followed the appellant while he was in the Atlanta airport. They noticed that he was carrying only one small suitcase and had no bag-claim stubs attached to his ticket. They followed him to the gate from which his plane to Detroit was to leave, and obtained his ticket from the gate agent. The ticket indicated that it had been paid for with cash and that it was for one-way travel only. A check with the airline computer indicated further that the reservation had been changed shortly before the flight was to depart and that the purchaser had left no local telephone callback number.

The above recited facts matched some of the factors in what has become known as the "Drug Courier Profile." Accordingly, Agent Mathewson decided to attempt to interview the appellant. The officers approached the appellant, identifying themselves as police officers, and asked if they could speak with him for a minute. Appellant said "Sure." Agent Mathewson asked appellant if he could see his airplane ticket and some identification. Appellant voluntarily provided both. At this point the agents noted that appellant was exhibiting signs of nervousness, including shaky hands and shortness of breath. There was then a brief discussion of what appellant had been doing in Florida and how long he had been there. Agent Mathewson then informed appellant that he was a federal narcotics agent and asked if appellant was carrying any drugs. Appellant responded in the negative. Agent Mathewson then asked if appellant would voluntarily submit to a brief pat-down of his undergarments and a search of his suitcase. Appellant agreed to the search. Agent Mathewson then asked appellant if he would prefer to be searched in a nearby Delta office, where it would be less embarrassing. Appellant said "Sure."

When they entered the office, appellant began to open his suitcase, but was stopped by Agent Mathewson. The agent told him that he should be informed of his rights before being searched. Reading from a card, Agent Mathewson informed the appellant that he had the right to refuse to allow the search of his person and personal property, that he had a right to contact an attorney before deciding whether to permit the search, and that any illegal items found could be used against him in court. When asked if he understood those rights, appellant said "Yes." Agent Mathewson began searching the suitcase, while Detective Burkhalter began a pat-down search of defendant's outer clothing. Upon feeling a lumpy object with a powdery consistency, Agent Burkhalter looked first in an outer and then in an inner pocket for the object. In appellant's inner pocket he discovered a bag containing the substance later determined to be cocaine hydrochloride. Appellant was arrested and taken to the DEA office for processing. While in that office, a thorough search of his person was undertaken and a quantity of methaqualone tablets were discovered in his underwear.

## THE STATUS OF THE CASE

The only legal question presented in this case was appellant's motion to suppress the contraband on the grounds that it was illegally seized. The motion was referred to a United States Magistrate, who recommended that it be denied. The magistrate concluded that (1) the contact between appellant and the police was not a seizure and, therefore, the proscriptions of the Fourth

**308**

Amendment were inapplicable, (2) the search of appellant's person and suitcase was pursuant to a valid, knowing, and willful consent, and (3) the officers did not extend the scope of the search beyond the reasonable limits to which appellant consented. The District Judge adopted the magistrate's findings, except the judge found the initial contact between the officers and appellant to be an illegal seizure unsupported by either reasonable suspicion or probable cause. The District Court nonetheless found appellant guilty on the grounds that the search resulting in the seizure of contraband was effectuated pursuant to a valid and knowing consent. Appellant appealed, and a panel of this Court remanded the case to the District Court to consider under *United States v. Robinson*, 625 F.2d 1211 (5th Cir. 1980), whether the taint of the illegal stop had become sufficiently attenuated so that the consent was valid. The District Court, while still finding the consent to have been voluntarily given, held that the taint of the illegal search was not sufficiently attenuated to make the consent valid. We hold that the District Court erred in treating the initial contact between appellant and the agents as a seizure within the meaning of the Fourth Amendment, but that the court was correct in its initial determination of guilt based on the voluntariness of the consent.

*THE INITIAL POLICE CONTACT*

■ The District Court determined that the initial conversation between appellant and the agents was an illegal seizure because they had neither reasonable suspicion nor probable cause to justify that contact. There is no question, and the government fully admits, that the agents did not have reasonable suspicion or probable cause to stop appellant. The mere existence of several of the criteria set forth in the drug courier profile, without more, does not justify a seizure. The government correctly points out, however, that not all police-citizen contacts are seizures subject to the proscriptions of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The central consideration in determining whether a police-citizen contact falls within the purview of the Fourth Amendment is whether "in the view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554, 100 S.Ct. at 1877. While the law in other circuits may not be as clear, the law in this circuit is quite clear that the police may approach a citizen in an airport, identify himself, request identification, and briefly question the individual without bringing into play the proscriptions of the Fourth Amendment so long as the individual is not detained against his will or otherwise coerced into cooperating. *United States v. Pulvano*, 629 F.2d 1151 (5th Cir. 1980); *United States v. Elmore*, 595 F.2d 1036 (5th Cir. 1979). As long as the cooperation is voluntary and not the product of police coercion, a seizure has not occurred.

■ In the instant case, it is quite clear, as the magistrate found, that appellant was neither required nor otherwise compelled to produce his identification or answer questions. The officers requested certain information and appellant elected to provide it. He could as easily have elected not to cooperate and simply walked away. The officers never demanded that he cooperate, they only requested information. There was no show of force nor was appellant's movement impeded. In that factual context, it is clear that appellant was not seized within the meaning of the Fourth Amendment at the time of the initial contact with the police. While we agree with the District Court that, were probable cause or reasonable suspicion required, they would not be present, we think it was error to assume that this was the type police-citizen contact which would require such proof. Accordingly, we hold that the initial conversation between appellant and the agents was not an illegal arrest. We also hold that, in view of the fact that appellant elected to be searched in the Delta office rather than in the concourse, the appellant was not seized within the meaning of the Fourth Amendment at the time he went with the agents to that office.

## THE SEARCH

■ The District Court, on remand, held that while the consent to search was voluntary, it was not valid because the taint of the illegal seizure was not sufficiently attenuated. Since we have already concluded that there was no illegal seizure, we need not review the District Court's analysis on the issue of attenuation. If appellant voluntarily consented to the search, then the search was valid. Voluntariness is a question to be determined from the totality of the circumstances, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1972), and we will not disturb the trial court's determination on appeal unless it is clearly erroneous. *United States v. Robinson*, 625 F.2d 1211 (5th Cir. 1980); *United States v. Troutman*, 590 F.2d 604, 606 (5th Cir. 1979).

■ In the instant case, the District Court initially determined and on remand affirmed that appellant's consent to the search was voluntary and knowing. We cannot say that that conclusion is clearly erroneous. The agents, after informing appellant of who they were and what they were looking for, asked appellant for permission to search his person and suitcase. They did not demand that he allow the search nor did they suggest that he had no alternative. In fact, the agents prevented him from opening his suitcase in the Delta office until they could first explain to him that he had a right to refuse to allow the search. He indicated that he understood that right, and we have no reason to believe otherwise. On the basis of those facts, we conclude that the District Court correctly determined that appellant's consent to the search was knowing and voluntary.

## THE SCOPE OF THE SEARCH

■ Appellant's final contention is that, while he may have consented to the search, he consented only to having the outside of his garments patted-down, not to having the inside pockets searched. We conclude, as did the magistrate and the district judge, that this contention is totally without merit. The officer was patting-down the outer garments in search of weapons or contraband. When he felt what seemed to be contraband in a pocket that was accessible only from the inside of appellant's jacket, the officer reached into that inside pocket and removed what was later determined to be cocaine hydrochloride. The agent acted well within the scope of a reasonable narcotics pat-down, and in fact would have been remiss had he not attempted to discover what the suspicious bulky object was.

For the reasons set forth herein, the judgment of the District Court is AFFIRMED, albeit on different grounds.