**The PEOPLE of the State of Colorado, Plaintiff-Appellant,**

v.

**Linel WELLS, Defendant-Appellee.**

**No. 83SA391.**

Supreme Court of Colorado,
En Banc.

Feb. 14, 1984.

James F. Smith, Dist. Atty., Emil A. Rinaldi, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, State Public Defender, Linda Hotes, Deputy State Public Defender, Brighton, for defendant-appellee.

QUINN, Justice.

The People pursuant to C.A.R. 4.1 appeal from a ruling of the district court suppressing the use of both physical and verbal evidence against the defendant, Linel Wells, in a pending criminal prosecution. The district court concluded that because there was no reasonable suspicion to stop the defendant, the evidence was the fruit of an unconstitutional seizure of the defendant's person. We reverse the suppression ruling.

The defendant, who was charged in the Adams County District Court with attempt to commit first degree criminal trespass,[1] filed a motion to suppress all the prosecution's evidence on the ground that it was obtained as a result of an unlawful seizure of his person in violation of the United

---

1. Sections 18–2–101 and 18–4–502, C.R.S.1973    (1978 Rcpl.Vol. 8).

States and Colorado Constitutions. *U.S. Const.* Amends. IV and XIV; *Colo. Const.* Art. II, Sec. 7. The only witness testifying at the suppression hearing was Officer Mark Nicastle of the Adams County Sheriff's Department. His testimony established the following facts.

On January 8, 1983, at approximately 7:30 a.m. Officer Nicastle was on routine car patrol near a warehouse complex located in the 1700 block·of East 85th Avenue in Adams County. Upon looking over the complex, the officer observed the defendant in the warehouse parking lot. The defendant, according to the officer, had backed up his vehicle, with the trunk open, against a tractor-trailer and appeared to be pulling on the gate handle of the trailer. Believing that the defendant might be unlawfully breaking into the trailer, the officer drove past the entryway to the warehouse and then proceeded to the parking lot. As the officer drove into the parking lot he saw that the defendant had already entered his vehicle and was leaving. The officer drove to the side of the defendant's vehicle, rolled down his window, and told the defendant to "hold on a second." The defendant stopped his car and the officer turned around and pulled up behind him.

In response to Officer Nicastle's inquiry about what he was doing there, the defendant stated that he was looking for a job and was waiting for the driver of the tractor-trailer to arrive. The officer next requested the defendant's driver's license. When the defendant reached into his back pocket, he first pulled out a wrench-like tool and a "needle-nosed pair of pliers" and then his wallet. The officer took the defendant's

driver's license and returned to his police vehicle where he called the police dispatcher for an identification check. He was informed by the dispatcher that the defendant was wanted on a Denver arrest warrant for second degree forgery. At this point Officer Nicastle made the decision to arrest the defendant and requested assistance from an officer in another police unit. When the other officer arrived, the defendant was arrested and searched. The wrench was recovered from his back pocket.

Shortly after the defendant's arrest, Officer Nicastle was able to contact the driver of the tractor-trailer. The driver came to the scene and, upon checking the trailer, determined that the aluminum seal on the back of the trailer had been removed. The officer perused the area and found the seal, which appeared to have been cut, lying on the ground about ten feet from the trailer. Officer Nicastle then arranged for the towing of the defendant's vehicle to the police station. He looked into the passenger compartment of the vehicle and observed the pliers, previously seen by him when the defendant removed his wallet from his rear pocket, stuffed inside the headrest of the driver's seat. The officer seized the pliers and the defendant's vehicle was later towed to the police station.

At the conclusion of the suppression hearing the district court ruled that the defendant's act of pulling on the trailer gate handle and then attempting to leave the scene when the officer entered the parking lot did not amount to a reasonable suspicion to justify the initial stop and accordingly granted the motion to suppress.[2]

**2.** In granting the defendant's suppression motion, the district court relied primarily on *People v. Quintero,* 657 P.2d 948 (Colo.1983), *cert. granted sub nom. Colorado v. Quintero,* — U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386, *cert. dismissed,* — U.S. ——, 104 S.Ct. 543, 78 L.Ed.2d — (1983). The court's reliance on *Quintero,* however, was misplaced. *Quintero* involved the issue of probable cause to arrest under the following circumstances. At about 12:45 p.m. on a hot September day a woman observed the defendant go up to the front window of a house across from her home, peer into the front of the house, and then walk away. About one hour

later she observed the defendant standing at a bus stop next to her house. The defendant had taken off his shirt to cover a television set and was pacing nervously and trying to hitchhike a ride while apparently waiting for the bus. The woman called the police, and a police officer arrived shortly thereafter. The defendant was unable to provide identification for the officer and claimed that he purchased the television set from someone in the neighborhood for $100. When the woman who called the police made herself known to the officer, the officer arrested the defendant notwithstanding the absence of

Although the court did not specify what evidence was suppressed, it apparently intended to include in its suppression ruling any and all evidence obtained subsequent to Officer Nicastle's stop, including the officer's observations at the scene, the defendant's post-stop statement to the officer, and any physical evidence taken by the police. The People, conceding that Officer Nicastle lacked probable cause to make an arrest when he first stopped the defendant in the warehouse parking lot, nonetheless claim that the officer's observations prior to the stop constituted reasonable suspicion to temporarily detain the defendant in order to investigate the circumstances of his conduct. We agree with the People's argument.

■ An investigatory stop, short of the traditional arrest, is an intermediate form of police response that may be utilized on less than probable cause under narrowly defined circumstances. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord, e.g., Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *People v. Tate*, 657 P.2d 955 (Colo.1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). To justify a limited intrusion, a police officer must have an articulable and specific basis in fact for suspecting that criminal activity has occurred or is about to take place, the purpose of the intrusion must be a reasonable one, and its scope and character must be reasonably related to its purpose. *State of Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *People v. Lewis*, 659 P.2d 676 (Colo. 1983); *People v. Johnson*, 199 Colo. 68, 605 P.2d 46 (1980). The issue raised here involves only the first of these components— whether Officer Nicastle had a specific and articulable basis in fact for suspecting the defendant of criminal activity when he stopped him in the warehouse parking lot.

■ A subjective and unarticulated hunch of criminal activity will not support the "reasonable suspicion" necessary for an investigatory stop. *E.g., Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). On the contrary, "[t]he reasonable suspicion necessary for an investigative stop must be judged against an objective standard—that is, whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security." *People v. Thomas*, 660 P.2d 1272, 1274 (Colo.1983). We are satisfied that, when viewed against this objective standard, the observations of Officer Nicastle prior to stopping the defendant measured up to reasonable suspicion.

When the officer initially observed the defendant in the warehouse parking lot, the defendant had backed up his car with the trunk open, to the rear of the tractor-trailer, and was "pulling on the trailer-gate handle" in an obvious effort to open it. The officer reasonably inferred from this observation that the defendant was attempting to gain access to the interior of the trailer so that goods stored therein could be placed in the trunk of his vehicle. Given the common practice of unloading trailers on loading docks with the use of

any information at that point that a crime had occurred. Under the defendant's shirt was the television set and a video game. A subsequent search of the defendant's pockets produced $140 in cash, five rings, and some jewelry. Several hours after the arrest the police first learned that a burglary had been committed in the neighborhood and a television set and video game had been stolen. It was on this state of facts that this court affirmed the trial court's suppression of evidence because of the lack of

probable cause to arrest. *Quintero* neither turned on nor even discussed the issue of whether the facts there present amounted to reasonable suspicion to stop the defendant in order to briefly investigate the circumstances which prompted the woman's call to the police. Since *Quintero* involved only the issue of probable cause to arrest, and not reasonable suspicion to stop, it clearly was not applicable to the "reasonable suspicion" issue raised before the district court.

forklifts or other special equipment, the defendant's actions understandably aroused the officer's suspicion. As the officer entered the warehouse parking lot, the defendant, apparently aware that he had been seen by the officer, attempted to leave the scene. While admittedly the mere effort to avoid police contact does not give rise to a reasonable suspicion that criminal activity may be afoot, evasive action by a suspect does take on a sufficiently suspicious character to justify a stop when it is "coupled with an officer's specific knowledge connecting that person to some other action or circumstance indicative of criminal conduct." *People v. Thomas,* 660 P.2d at 1275–76. The total circumstances observed by the officer immediately prior to the stop—the defendant's physical action in attempting to forcibly open the trailer door and his obvious effort to leave the scene as the officer entered the parking lot—constitute a sufficiently particularized basis in fact for stopping the defendant in order to briefly investigate the circumstances of his conduct. *See, e.g., People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983); *People v. Schreyer,* 640 P.2d 1147 (Colo. 1982); *People v. Johnson,* 199 Colo. 68, 605 P.2d 46 (1980); *People v. Mangum,* 189 Colo. 246, 539 P.2d 120 (1975).

Because the initial stop was a legitimate intrusion into the defendant's personal security, the officer's observations in the course of the stop, as well as the defendant's statement to the officer immediately after the stop,[3] were not the products of an unconstitutional seizure of the defendant's person. Furthermore, once the officer was informed by the dispatcher of the outstanding arrest warrant, he was entitled to act on that information and arrest the defendant. *People v. Gouker,* 665 P.2d 113 (Colo.1983). As incident to the arrest, the officer had the right to search the defendant and to impound his vehicle. One tool was seized from the defendant's pocket in the course of a search incident to arrest, and the other tool was observed and seized by the officer in the course of preparing the defendant's vehicle for impoundment. Rather than being the fruit of illegal police conduct, the seizure of these tools was the legitimate product of a valid arrest based on probable cause. Finally, the seizure by Officer Nicastle of the aluminum seal lying near the trailer was not the result of any intrusion into the defendant's privacy at all, but instead was the result of a plain view discovery of abandoned property.

The suppression ruling is reversed.

ROVIRA, J., does not participate.

---

**3.** Because the sole issue raised at the suppression hearing was whether Officer Nicastle had reasonable suspicion to initially stop the defendant, the district court had no occasion to consider whether the defendant's statement to Officer Nicastle at the scene was the result of custodial interrogation which should have been preceded by a proper advisement of the defendant's *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Johnson,* 671 P.2d 958 (Colo. 1983). We express no view on that matter, as it was neither argued below nor raised in the briefs before this court.