The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Kenneth D. JOHNSON, Defendant-Appellant.

No. 83CA0056.

Colorado Court of Appeals, Div. II.

April 19, 1984.

Rehearing Denied May 31, 1984.

Certiorari Denied Nov. 19, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Patricia A. Wallace, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Diana L. DeGette, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant was convicted by a jury of the aggravated robbery of a fast food restaurant in Denver. He appeals the trial court's refusal to suppress the evidence obtained as a result of his allegedly illegal stop by a police officer. We affirm.

Just after midnight on July 14, 1982, a Denver police officer was on routine patrol in an unmarked police car. The officer's attention was drawn to two men, running in a hunched-over position from the vicinity of a fast food restaurant. Upon noticing that the restaurant was closed, the officer became suspicious and followed the men to a parked car. A third man was at the wheel at the time. The two men, one of whom was the defendant, entered the front seat of the car. The officer pulled his vehicle into a position blocking the car and shined his headlights on it. The defendant and the other man who had just entered the car got out of the car and each appeared to toss something away, after which the defendant stood by the car and the second man walked briskly away from the scene unapprehended. The driver remained inside the car.

Shortly after the above events occurred, the officer heard a report of a robbery of the restaurant on his police radio. The report identified two black males wearing dark clothing as suspects. The officer then approached the blocked car, arrested defendant and the other remaining man, and found rolls of coins in money bags and a gun on the ground near the car.

After the arrest, the officer took the two suspects to the restaurant, where a restaurant employee identified defendant. The employee also later identified the defendant at trial.

Following his conviction, defendant was sentenced to seven years in the Department of Corrections. However, the sentence was suspended on the condition that the defendant complete the Cenikor program. This appeal followed.

■ Defendant's only argument on appeal is that his initial stop by the police was illegal and, therefore, all the evidence stemming from this stop should have been suppressed. We disagree.

Investigatory stops are valid when: (1) the police officers have a reasonable suspicion that the person stopped has committed, or is about to commit, a crime; (2) the purpose of the detention is reasonable; and (3) the character of the detention is reasonable in light of its purpose. *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). Here, we are concerned solely with the first prong of this three part test.

In determining whether there was a reasonable suspicion for an investigatory stop,

Colorado has adopted a "totality of circumstances" approach. Thus, the controlling question in arriving at such a determination is:

"[W]hether ... the whole picture—provides the officers with a particularized and objective basis for suspecting that a person or persons are engaged in criminal activity. The analysis must include objective observations ... and consideration of the modes or pattern of operation of certain kinds of law breakers. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A trained police officer is qualified to draw inferences and make deductions that might elude an untrained person. The officer's assessment must center on whether there is an articulable suspicion that a particular person is engaged in wrongdoing. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983).

■ Here, the articulable basis supporting the officer's suspicion that the defendant had engaged in criminal activity is derived from several facts. First, the defendant and a confederate were running bent down like "football players carrying a football." As the United States Supreme Court observed in *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 937 (1968), "deliberately furtive actions and flight at the approach of ... law officers are strong indicia of *mens rea* ...." Second, it was after midnight and the restaurant from whence the defendant and his cohort were running was closed. Third, the officer who made the stop was a police veteran of 13 years, and was thereby qualified to draw inferences and make deductions that might elude an untrained person. *People v. Hazelhurst, supra.*

■ Given the particular facts of the case at bar, defendant's reliance upon *People v. Thomas*, 660 P.2d 1272 (Colo.1983) is misplaced. In *Thomas*, our Supreme Court declined to find the existence of a reasonable suspicion of criminal activity on the part of the defendant where the only fact allegedly giving rise to such a suspicion was that the defendant put his hand into his pocket and then started to run. The problem with the so-called "furtive gesture" in *Thomas* was, as the Court pointed out, its "inherent ambiguity." However, while putting a hand in one's pocket and running might have been "impelled by a variety of motives," *People v. Thomas, supra*, two men running from a closed restaurant in hunched-over positions like "football players carrying a football" after midnight is not nearly as ambiguous a gesture.

In light of the facts composing the "whole picture" here, and in view of the officer's experience in interpreting the significance of such facts for purposes of crime detection, we hold that the stop of defendant was justifiable. *See People v. Wells*, 676 P.2d 698 (Colo.1984).

■ As the United States Supreme Court so ably elucidated:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary ... it may be the essence of good police work to adopt an intermediate response." *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612 (1972).

Here, although the specific facts necessary for a finding of probable cause were lacking, the officer's intermediate response of an investigatory stop was appropriate in light of the limited nature of the intrusion and the importance of the governmental interest at stake.

Judgment affirmed.

SMITH and BABCOCK, JJ., concur.