**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Loren Richard DENNEY,**
**Defendant-Appellant.**

No. 84–2855.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1985.
Decided Aug. 27, 1985.

Belle T. Choate, Indianapolis, Ind., for plaintiff-appellee.

John Jarvey, U.S. Atty's. Office, Indianapolis, Ind., for defendant-appellant.

Before CUDAHY, ESCHBACH, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

Defendant Loren Richard Denney appeals from a judgment of conviction entered in October 19, 1984, after he pleaded guilty to a one-count indictment for possession with intent to distribute approximately twenty-one pounds of marijuana in violation of Title 21, United States Code, Section 841(a)(1). With the Government's consent and the district court's approval, the defendant entered a plea of guilty to that count while reserving the right to appeal from the district court's adverse ruling in a pretrial suppression hearing denying his motion to exclude the marijuana from the evidence.[1] The only issue raised by the defendant in this appeal is whether or not the district court erred in denying his motion to suppress the marijuana seized during a search of the interior of his vehicle incident to a *Terry* investigative detention. For the reasons discussed below, we affirm.

Pursuant to a search warrant issued by a United States Magistrate in the Southern District of Indiana, special agents of the Drug Enforcement Administration and police officers from the Indiana Police Department and the Indiana State Police conducted a search on April 16, 1984 at the residence of Francis Leon Denney at Rural Route 2, Box 331, Worthington, Indiana. Based upon the investigations by undercover agents, the officers had reasonable basis to believe that persons at the location of the search would have access to firearms, some of which were believed to be automatic weapons. The officers equipped themselves properly; some of them wore bulletproof vests underneath the raid jackets.[2] During the search of the premises, the officers found several firearms, including a rifle, two shotguns and a revolver.

At approximately 5:00 p.m. when the officers were about to conclude the search, a white-over-brown Ford Bronco pick-up truck moved down the gravel road leading to the premises at high speed. The officers observed that the truck was going between 45 and 50 miles per hour. As the truck approached the premises, it skidded to a halt and came near several officers. Because the identity of the driver was not known to the officers at that time and because of the manner in which the truck approached the premises, Special Agent Thomas Chown identified himself as such and, with his gun drawn, ordered the driver to raise his hands and to exit the truck. The driver did not heed Agent Chown's command. After a second order to the driver to exit the truck, the driver made a motion toward the center of the truck. Agent Chown interpreted this motion by the driver as consistent with that of reaching for a weapon. At this point, the officers, with their guns drawn and pointed at the driver, approached the truck, opened the doors on both sides and physically removed the driver from the truck. The driv-

---

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas, is sitting by designation.

1. The conditional plea agreement was entered into pursuant to Rule 11(a)(2) (1983), which provided in pertinent part that "Conditional Pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty ..., reserving in writing, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea."

2. Agent Thomas Chown described a raid jacket as a blue nylon jacket which has either the Drug Enforcement Administration or the Department of Justice insignia imprinted on the sleeve and the marking of "Special Agent" on its back.

er identified himself as Loren Richard Denney, while the officers frisked him for contraband and weapons.[3] One of the officers who opened the door on the passenger side said he smelled the odor of marijuana. The officer, without disturbing any items within the truck, then made a cursory observation of its interior to look for weapons. He saw a large box wrapped in opaque black plastic sheet with silver duct tape around it lying on the center console between the front driver and passenger seats. Unique symbols and weight units appeared on the box. Based upon his training and experience as a narcotics officer, together with the strong odor of marijuana emanating from within the truck, the officer formed a reasonable belief that the box contained marijuana. The officers placed the defendant under arrest for violation of the controlled substance act and read him his *Miranda* rights.

The officers seized the box but did not open it until they brought it with the defendant to the Drug Enforcement Administration Office in Indianapolis.[4] At the office, some of the special agents asked the defendant for his consent to open the box seized from his truck. The agents told him that they would apply for a search warrant if the defendant refused to give his consent. The defendant assented to the search request and signed the consent form. When the agents opened the box, they found approximately 21 pounds of marijuana. The marijuana was the subject matter of the suppression motion which the district court denied. The district court found that the brief investigatory detention was reasonable and in conformity with the law, and that the immediate detection of the odor of marijuana during a protective search of the interior of the truck for weapons following the brief detention gave rise to probable cause for the seizure of the box and the arrest of the defendant. The district court also concluded that the consent given for the search of the box was legit-

imate, upon the finding that the defendant "was capable of giving knowing and voluntary consent" to the search request by the special agents.

The defendant asserts two reasons why the seizure of the box containing the marijuana violated his Fourth Amendment rights. The defendant challenges the district court's findings that the officers had reasonable suspicion supported by articulable facts which would justify an investigative detention. If the detention was unlawful, the defendant contends that the marijuana discovered during the confrontation should therefore have been suppressed. The defendant also contends that his consent to the search request was tainted because it was given subsequent to an unlawful detention and was obtained by coercion.

The Constitution of the United States does not forbid all searches and seizures, but only those that are unreasonable. *Elkins v. United States*, 364 U.S. 206, 213, 80 S.Ct. 1437, 1441, 4 L.Ed.2d 1669, 1675 (1960). Warrantless searches are generally considered unreasonable unless they fall within a few specific established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). The exception we find applicable here is based on the principle, first announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), of a line of Supreme Court cases which authorizes a police officer in appropriate circumstances to conduct a protective search for weapons incident to a valid investigative detention. *See also Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

 In *Terry v. Ohio, supra*, the Supreme Court explored the constitutional

---

**3.** During the frisk, the officer uncovered on the defendant drug paraphernalia equipment used to prepare cocaine and traces of "white powder."

**4.** At the DEA office, the officers strip-searched the defendant as a part of the routine booking process and found a small quantity of marijuana secreted in one of his socks.

limitations which the Fourth Amendment places upon the warrantless accosting of individuals by police officers. The Court held that even in the absence of probable cause a police officer may stop an individual briefly to investigate the circumstances which provoke his suspicion, provided that the police officer is "able to point to specific and articulable facts which, taken with rational inferences from those facts," give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity. 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905–906. Such investigative stops based on articulable suspicion are permissible because "(t)he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972). In determining whether an officer's suspicion was reasonable, the "totality of the circumstances" must be taken into consideration, *United States v. Cortez, supra*, 449 U.S. at 417, 101 S.Ct. at 694, 66 L.Ed.2d at 629, and "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience" as a police officer. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 66 L.Ed.2d at 909. If there is a reasonable and objective basis that will justify an investigative detention, the officer may use reasonable force to effect the detention. *Michigan v. Summers, supra*, 452 U.S. at 698 & n. 7, 101 S.Ct. at 2592 & n. 7, 69 L.Ed.2d at 347 & n. 7.

Although the holding in *Terry* was limited to a pat-down search of a person for concealed weapons, *Terry, supra*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911, the Court has recently stated in *Michigan v. Long, supra*, that the rationale discussed in *Terry* needed "not be read as restricting the preventative search to the person of the detained suspect." 103 S.Ct. at 3479, 77 L.Ed.2d at 1218. The Court observed

that historical facts have shown investigative detentions involving suspects in vehicles at the roadsides are especially dangerous to the police officers. *Long*, 103 S.Ct. at 3480 & n. 13, 77 L.Ed.2d at 1219 & n. 13. *See also Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 336 (1977) (police may, in connection with an investigative stop, order an individual out of his vehicle for the officer's safety). By relying on its reasonings in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (police may search an arrestee's person and the area "within his immediate control"), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (police may search the interior of a vehicle incident to a lawful arrest of its occupants), the Court expanded the scope of a *Terry* search in *Michigan v. Long, supra*, to include a suspect's car based on reasonable suspicion. Specifically, the Court held that a police officer who has made a *Terry* investigative stop of a suspect may make a protective search of the passenger compartment of the vehicle in which he was driving, limited to the areas in which a weapon may be placed or concealed, if the officer has a reasonable belief, based on specific and articulable facts and inferences drawn therefrom, that the suspect whom the officer confronts is dangerous and may gain immediate control of weapons. *Long*, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220. *See also United States v. Rainone*, 586 F.2d 1132, 1134–1136 (7th Cir.1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 239 (1979); *United States v. Merritt*, 695 F.2d 1263, 1271–1274 (10th Cir. 1982), *cert. denied*, 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983).

We find the record fully supports the district court's conclusions that the officers had reasonable, articulable suspicion under the totality of the circumstances to justify the detention of the defendant, and that the protective search limited to the interior areas of the truck in which a weapon may be placed or hidden was properly conducted within the constitutional bound-

ary of the Fourth Amendment. By the time the defendant drove up to Francis Leon Denney's house, the officers had already found, with a search warrant for weapons, several pieces of firearms in the house. The manner in which the defendant approached the house in his truck in a "high rate of speed" and his refusal to cooperate with the officers' request to keep his hands in sight and to exit the truck intensified the officers' reasonable concerns for their safety. The officers had reasonable basis to suspect that the occupant of the truck, whose identity was not yet known to the officers, might be armed and dangerous. The defendant's furtive gestures in moving or leaning toward the right side of the truck—a motion which the officers reasonably interpreted was consistent with reaching for a weapon—compounded the officers' belief that violence was imminent. *See e.g., Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–1905, 20 L.Ed.2d 917, 936–937 (1968) (suspect's deliberately furtive movements when approached by police officers "are strong indicia of *mens rea.*") In view of the nature of the criminal activity being investigated, the degree of suspicion provoked by the defendant's precipitous manners as he approached the house being searched, the location where he stopped his truck, and his unusual conduct in reaching into an area to his right side as the officers approached and ordered him out of the truck, it was not unreasonable for the officers to have their guns drawn and to detain the defendant for investigatory purposes in the manner they chose to ensure their own safety. *Terry, supra,* 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–908, and *id.,* 392 U.S. at 32, 88 S.Ct. at 1885, 20 L.Ed.2d at 912 (Harlan, J. concurring).

Once the legality of an investigative detention is established, a police officer is entitled to conduct a protective search for weapons in the passenger compartment of the vehicle if the officer has an articulable and specific suspicion that the suspect is potentially dangerous. *Michigan v. Long, supra.* Here, the officer, in looking into an area of the truck from which the defendant might have access to weapons, observed in plain view a box wrapped in plastic sheet with some unusual markings on its outside, from which the odor of marijuana emanated. We agree with the district court that there was probable cause to believe that the box contained marijuana, and that the warrantless seizure of it from the defendant's possession was proper and in accordance with the law. *Texas v. Brown,* 460 U.S. 730, 742–744, 103 S.Ct. 1535, 1543–1544, 75 L.Ed.2d 502, 514–515 (1983).

The defendant also contends that his consent to the opening and search of the box was invalid because it was obtained by exploitation of an illegal detention, or in the alternative, that he did not voluntarily consent to the search. To the extent that the defendant challenges the validity of his consent based on the "fruit of the poisonous tree" theory, this argument is foreclosed by our decision that the investigative detention was not inconsistent with the constitutional requirements of the Fourth Amendment. The issue of whether a consent given in response to a search request by a police officer is voluntary is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 863 (1973). On appeal, we will not disturb the district court's conclusion that consent was voluntarily given unless its finding was contrary to the evidence and clearly erroneous. *United States v. Griffin,* 530 F.2d 739, 742 (7th Cir.1976). *See generally, Anderson v. Bessemer City,* — U.S. ——, 105 S.Ct. 1504, 1511–1513, 84 L.Ed.2d 518, 528–530 (1985). The record shows that the officers explained to the defendant the scope of and the possible ramifications from his consent should the search reveal incriminating evidence. The defendant agreed to the search request by signing the consent form. During the suppression hearing, the district court observed that the defendant was an "alert, intelligent twenty-eight year old man" and concluded that he was "capable of giving a knowing and voluntary con-

sent." We find the district court's conclusion is amply supported by the record.

We conclude that the investigatory detention of the defendant and the protective search of the interior compartment of his truck was reasonable under the principles laid down by *Terry v. Ohio, supra,* and reiterated in *Michigan v. Long, supra.* The district court's judgment in denying the defendant's motion to suppress the marijuana seized from his truck is AFFIRMED.