The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

James Weldon HUGHES,
Defendant–Appellee.

No. 87SA469.

Supreme Court of Colorado,
En Banc.

Jan. 17, 1989.

G.F. Sandstrom, Dist. Atty., Tenth Judicial Dist., Scott B. Epstein, Chief Deputy Dist. Atty. Kathleen G. Eberling, Deputy District Atty., Pueblo, for plaintiff-appellant.

Joseph A. Koncilja, Pueblo, for defendant-appellee.

MULLARKEY, Justice.

In this interlocutory appeal pursuant to C.A.R. 4.1, the People challenge the trial court order suppressing a film canister containing cocaine and a statement made by the defendant, James Weldon Hughes (Hughes), at the time the police discovered the cocaine. We conclude that the trial court improperly restricted the permissible scope of the search under the search warrant and erroneously suppressed the cocaine and the defendant's statement. We reverse and remand the case for further proceedings.

### I.

On January 30, 1987, Detective Lewis Andrew (the detective) obtained a search warrant to search for cocaine and cocaine "vessels" and "implements" in Gary Spaccamonti's apartment in Pueblo. The affidavit which was submitted in support of the search warrant relied largely on information supplied by a confidential informant. The affidavit stated that the informant's reliability was based on the fact that the informant had worked with the detective on narcotics cases for over three months and that the informant had always supplied accurate information, including information which recently led to the arrest of two people for distribution of cocaine. The affidavit also recounted the confidential informant's interactions with Gary Spaccamonti who lived in the apartment identified in the search warrant. According to the informant, Spaccamonti had cocaine for sale at the residence within twenty-four hours of the time when the police applied for the search warrant.

The informant also provided a description of Spaccamonti's drug supplier, but this information was not included in the affidavit for the search warrant. The remaining facts of this case were supplied by the testimony of Detective Andrew and Officer Steven Samek who were the only witnesses at the suppression hearing. In his testimony at the suppression hearing, the detective stated that the informant described the supplier as "an older white male, approximately 50 years old, he was a cowboy, he was from Trinidad and he was also a pilot." The informant had never seen the supplier but had heard Spaccamonti describe him.

On January 30, 1982, five minutes before the detective and Officer Samek entered the apartment to execute the search warrant, the confidential informant left the apartment. The informant told the detective that Spaccamonti, his girlfriend, his son, and another white male "dressed like a cowboy" were currently in the apartment. The informant said he thought the man was from Trinidad but that he did not think the man was the supplier because, in his opinion, the man was not that old.

The detective and the officer then knocked on the door and waited until Spaccamonti opened it. They identified themselves as police officers and announced that they had a search warrant. As they looked into the apartment, they saw a man dressed in a cowboy shirt, jeans and cowboy boots who was later identified as the defendant Hughes; Spaccamonti; a woman; and a young boy. Detective Andrew testified that, when he observed Hughes, he thought Hughes met the informant's description of Spaccamonti's drug supplier. In addition to noting Hughes' clothing, the detective said that Hughes appeared to be an older white male.

As the police entered the apartment, Hughes began to get up from the couch. The detective ordered Hughes to turn around and put his hands up against the wall so that the detective could frisk him. The detective testified that he was initially searching Hughes for weapons because, in his fourteen-year experience as a narcotics officer, people who buy and sell narcotics frequently carry dangerous weapons. The detective also stated that he frisked Hughes because he felt Hughes matched the informant's description of the drug supplier.

As the detective was doing a pat-down search of Hughes' chest area, Hughes "dropped his right arm and ducked his head over" in a manner which caused the detective to believe that he was trying to conceal something in his right shirt pocket. The detective responded by feeling Hughes' pocket and noting a hard cylindrical object there. He took the object out of Hughes' pocket and saw that it was a film canister. He then opened it and saw two plastic bags of a substance which was later determined to be cocaine. While the detective was examining the contents of the canister, Hughes volunteered the statement, "I just bought it." The detective told Hughes that he was under arrest, handcuffed him, and thoroughly searched Hughes, discovering $330 in U.S. currency in Hughes' pockets. The search of the premises also uncovered several packets of cocaine and drug paraphernalia, but that evidence is not at issue in this case.

The trial court found that no probable cause existed to arrest or search Hughes because, based on the informant's information about Hughes, the police could only have a "mere suspicion," not enough to rise to the level of probable cause. The trial court suppressed the cocaine and all items found in Hughes' pockets as well as his statement.

## II.

The defendant initially asserts that the mere fact that the police had a search warrant for the premises did not justify a search of everyone who happened to be found on the premises at the time the search warrant was executed. He relies on *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), which prohibits the indiscriminate searching of all those present in a public place during the execution of a search warrant for illegal drugs on the premises. *Ybarra* rejected the notion that an individual who was present on the premises could be searched because of his "mere propinquity to others independently suspected of criminal activity." 444 U.S. at 91, 100 S.Ct. at 342. Rather, the court re-affirmed that the test of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), must be met in order to search a person not named in the search warrant. *Ybarra,* 444 U.S. at 92–93, 100 S.Ct. at 342–343.

*Ybarra* is factually distinguishable because this case does not involve public premises and the police did not conduct a wholesale search of all who were present. Only two individuals were searched: Gary Spaccamonti, who was the named occupant of the premises identified in the search warrant, and the defendant Hughes who, in the officer's judgment, matched the informant's description of the drug supplier. The woman and young boy, who also were present, were not searched. Thus, we conclude that *Ybarra* does not prohibit the search of Hughes. We next consider whether the search was permitted under *Terry v. Ohio.*

## III.

*Terry v. Ohio* permits a weapons search or "stop and frisk" if specific, articulable facts, taken together with reasonable inferences which may be drawn from those facts, "give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity." *United States v. Williams,* 822 F.2d 1174, 1178 (D.C.Cir.1987) (quoting *United States v. Denney,* 771 F.2d 318, 321 (7th Cir.1985) and *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1880). We have interpreted *Terry* as establishing a three part test which allows police to conduct an investigatory stop and frisk when:

(1) there is an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to occur; (2) the purpose of the intrusion is reasonable; and (3) the scope and character of the intrusion is reasonably related to its purpose.

People v. Melgosa, 753 P.2d 221, 225 (Colo. 1988); People v. Tate, 657 P.2d 955, 958 (Colo.1983).

Applying the Terry standard to the facts of this case, we conclude that the record establishes the existence of all three conditions necessary for a proper stop and frisk.

### A.

First, the officers had enough facts provided by the informant to have a specific, articulable basis to suspect that cocaine was present and that Spaccamonti had offered cocaine for sale on the premises within the past twenty-four hours. Hughes, seated in Spaccamonti's living room, appeared to match the informant's description of Spaccamonti's drug supplier.

We reject the defendant's contention that the police could not reasonably infer that he was the drug supplier because the informant told the police that he did not believe that the defendant was the drug supplier. As the evidence discussed in part I shows, the informant came out of the apartment shortly before the search warrant was executed. He told the detective that a man "dressed like a cowboy" was present in Spaccamonti's apartment. He added his opinion that the man in the apartment was not Spaccamonti's supplier because he was not old enough. Based on this statement by the informant, Hughes argues that the detective could not reasonably have suspected that he was the drug supplier. In our view, Hughes' argument would require the police to possess a certainty of knowledge which far exceeds the standard of Terry.

Terry requires only that police have a reasonable suspicion that the defendant is engaged in criminal activity, a less exacting standard than the standard which the police must meet for probable cause. People v. Melgosa, 753 P.2d at 225. The United States Supreme Court explained the reason for the lesser degree of certainty for a Terry stop:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response.

Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), quoted in People v. Johnson, 691 P.2d 751, 753 (Colo.Ct.App.1984).

▐ Police may base a reasonable suspicion for a Terry "stop and frisk" on information provided by a reliable informant. People v. Shorty, 731 P.2d 679 (Colo.1987); Adams v. Williams, 407 U.S. at 148, 92 S.Ct. at 1924; Project: Sixteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1985–1986, 75 Geo.L.J. 713, 744 n. 179 (1987). Importantly for this case, police officers also are permitted to make reasonable inferences from the information available to them. See, e.g., People v. Mascarenas, 726 P.2d 644 (Colo.1986) (sufficient reason for investigatory stop existed due to officer's reasonable inferences where police were aware of recent burglary in immediate area, where defendant drove evasively after seeing police, and where officer in his experience knew that defendant was not likely to be a resident or visitor in neighborhood). Here, the detective reasonably concluded that the defendant matched the description of Spaccamonti's drug supplier because of the defendant's appearance and his presence at the suspected drug seller's home. The defendant was dressed in cowboy clothes, was from Trinidad, and appeared to the police to be an older white male. Thus, the police had a reasonable suspicion to believe that

the defendant was Spaccamonti's drug supplier, and the trial court erred by holding that the higher, probable cause standard applied.

## B.

Turning to the second part of the *Terry* test, we consider whether the purpose of the intrusion was reasonable. The defendant argues that the pat-down was invalid because the officers "intended and did search the defendant for evidence of possession of controlled substance and not for possession of a weapon." His argument is based on the detective's testimony that because the police were conducting an announced search of the apartment for cocaine, it was not unreasonable to expect that "if there is any cocaine within anybody's reach in that apartment they could grab it and try to conceal it." The detective also emphasized that he initiated the search as a pat-down for weapons because he knew from his experience in narcotics enforcement that people involved in illegal drug transactions often carry guns.

■ The officer's subjective intent is not critical to determining whether there was a legitimate purpose for the intrusion. *People v. Tate*, 657 P.2d 955, 959–60 (Lohr, J., concurring). In this case, we find that it was reasonable to frisk Hughes, a suspected drug supplier, in order to protect the officers' safety while they executed the search warrant. *See, e.g., United States v. Trullo*, 809 F.2d 108 (1st Cir.1987), *cert. denied*, — U.S. ——, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987) (in location known for drug-dealing, pat-down search of occupants in room is justified when police have legitimate safety concerns due to well-founded suspicion that person is involved in drug trade, because of fact that "firearms are tools of the trade" in the drug world). *See also* § 16–3–103, 8A C.R.S. (1986) (codification of the *Terry* standards for stop and frisk, which allows officers to conduct a pat-down search if they reasonably suspect that their personal safety requires it).

## C.

■ The final consideration under *Terry* is the reasonableness of the scope and character of the search. In considering this issue, we are guided by the principle that the ultimate test is "whether the search was reasonable under all relevant attendant circumstances." *People v. Dandrea*, 736 P.2d 1211, 1216 (Colo.1987) (citing *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)); *People v. Unruh*, 713 P.2d 370 (Colo.1986), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986).

First, we note that evidence discovered in the course of a lawful search for weapons is generally admissible. *United States v. Chavez*, 812 F.2d 1295, 1301 (10th Cir. 1987); *People v. Lee*, 194 Cal.App.3d 975, 240 Cal.Rptr. 32 (1987); *People v. Tate*, 657 P.2d 955 (Colo.1983). Even when the object which the police discover is not a weapon, courts have admitted the evidence as the product of a lawful frisk as long as its discovery was reasonable under all of the circumstances. *Id.*

We considered a similar fact situation in which incriminating evidence was found during a frisk in *People v. Tate*. In *Tate*, the police responded to a report of a burglary in progress and detained the defendant who was found running from the scene of the crime. Acting on a reasonable suspicion that the defendant was armed and dangerous, the police conducted a frisk of the defendant which uncovered a screwdriver, a prying tool commonly used in burglaries. We held that the seizure of the screwdriver "was the product of a permissible frisk for weapons conducted during a lawful detention of the defendant." *Tate*, 657 P.2d at 958.

Similarly, the court allowed the admission of evidence discovered during a frisk in *United States v. Smith*, 649 F.2d 305 (5th Cir.1981), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983). In *Smith*, an officer conducting a pat-down search felt what seemed to be contraband in defendant's pocket, reached into the

pocket and removed what later was determined to be cocaine. The court held that "[t]he agent acted well within the scope of a reasonable narcotics pat-down, and in fact would have been remiss had he not attempted to discover what the suspicious bulky object was." *Smith*, 649 F.2d at 309.

██ The discovery of contraband during a lawful frisk can provide probable cause for a more thorough search. *Melgosa*, 753 P.2d at 221; *Lee*, 240 Cal.Rptr. at 32. In *Melgosa*, a cassette tape, which was discovered and removed from the defendant's rear pocket during a pat-down search, provided probable cause for a thorough search of the defendant's car for a stolen tape deck. In *Lee*, the officer conducted a *Terry* stop and frisk of a defendant because of his reasonable suspicion based on an informant's tip that the defendant was selling drugs. As the officer was patting down the defendant for weapons, he felt a "clump of small resilient objects" in the chest area of defendant's jacket. He knew the clump was not a weapon, but believed he had touched heroin-filled balloons. The officer arrested the defendant for possession of heroin and took the heroin out of his pocket. The court held that the officer's "tactile perceptions, coupled with the other facts known to him [the informant's tip], furnished probable cause to believe that defendant's jacket contained heroin," and thus justified the seizure of the drugs and a more thorough search. *Lee*, 240 Cal.Rptr. at 37.

A further factor contributing to the reasonableness of the detective's frisk of Hughes was the fact that the police possessed a valid search warrant for the apartment where Hughes was found. Professor LaFave suggests that the existence of a search warrant expands the scope of a frisk of a person found on the premises: "[a] more extensive patting-down may be justified in the search warrant execution case than in the typical *Terry* encounter on the street." 2 W. LaFave *Search & Seizure: A Treatise on the Fourth Amendment* § 4.9(d) at 299 (2d ed. 1987).

██ In addition, the permissible scope of a *Terry* search may be expanded if a suspect makes an obvious furtive gesture to conceal something from the officer conducting the search. *People v. Cagle*, 688 P.2d 718 (Colo.1984); *People v. Cagle*, 751 P.2d 614 (Colo.1988), *appeal dismissed sub nom. Cagle v. Colorado*, — U.S. —, 108 S.Ct. 2009, 100 L.Ed.2d 597 (1988). *See People v. Shackelford*, 37 Colo.App. 317, 546 P.2d 964 (1976) (attempt by defendant to "palm" object in his hand during weapons frisk justifies search and seizure of object). Experienced police officers may draw reasonable inferences from furtive gestures. *People v. Johnson*, 691 P.2d 751 (Colo.Ct.App.1984). In *Cagle*, a passenger's furtive conduct (bending down in his seat after the officer pulled over the car in which he was riding) justified a more thorough weapons search in that area of the car. In the present case, as the officer was patting down the defendant's exterior clothing, the defendant moved his arm across his chest in what the officer suspected was an attempt to conceal something. The officer then felt the pocket and removed a film canister. The officer's actions were a reasonable protective measure, made in response to the defendant's furtive movements, and we conclude that the final part of the *Terry* test was met.

## IV.

██ Once the film canister was lawfully removed from Hughes' pocket, it could be opened pursuant to the search warrant because Hughes was connected to the premises as Spaccamonti's drug supplier and the film canister was within the scope of the search warrant as a "vessel" likely to contain cocaine. *United States v. Micheli*, 487 F.2d 429 (1st Cir.1973); *United States v. Neet*, 504 F.Supp. 1220 (D.Colo.1981). In *Neet*, the court upheld the search of a defendant's personal briefcase under a premises search warrant because it found a relationship between the defendant and the premises which was the subject of a search warrant for cocaine.

The defendant was connected with the premises because the police had information linking him to the cocaine delivery in question and the defendant implicated himself by trying to destroy the cocaine when police arrived to execute the warrant. *Neet*, 504 F.Supp. at 1228. In *United States v. Giwa*, 831 F.2d 538 (5th Cir.1987), the court analyzed the relationship between the defendant, who was an overnight visitor, and the apartment described in the search warrant. The court concluded that the defendant was not a "mere visitor" or "passerby" and thus the agents executing a search warrant for evidence of credit card fraud could search the defendant's flight bag because it reasonably could have contained evidence within the scope of the search warrant. *Giwa*, 831 F.2d at 545. *See also United States v. Gray*, 814 F.2d 49 (1st Cir.1987) (police could validly search defendant's jacket which was found on chair in house during execution of search warrant because circumstances under which defendant was found in house strongly suggested that he was no "mere visitor" to premises).

In the case before us, the defendant cannot be characterized as a "mere visitor" or "passerby" but was connected to the premises and the purpose of the search warrant because he fit the description of the apartment occupant's drug supplier. Given the information supplied by the informant, the defendant's conduct during the frisk, and the plausible inferences therefrom, the officers reasonably could believe that the defendant was connected to the premises as the occupant's drug supplier for the cocaine deal in question.

The search of the film canister was within the scope of the warrant because, according to the evidence, a film canister is an item frequently used to carry cocaine. Reasonable grounds for believing a package contains contraband may be afforded by its shape, its design, and the manner in which it is carried. *People v. Lee*, 240 Cal.Rptr. at 37 (quoting *People v. McKinnon*, 7 Cal.3d 899, 103 Cal.Rptr. 897, 500

P.2d 1097 (1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1891, 36 L.Ed.2d 390 (1973)). *See, e.g., People v. Valdez*, 196 Cal.App.3d 799, 242 Cal.Rptr. 142 (Cal.1987) (cocaine found in plastic film canister in defendant's shirt pocket); *People v. Chinchillo*, 120 A.D.2d 266, 509 N.Y.S.2d 153 (1986) (film canister containing marijuana found in breast pocket of defendant's jacket). Detective Andrew testified that in his fourteen years as a narcotics officer he frequently found drugs in film canisters, and never found film in a canister during a drug arrest. For these reasons, we conclude that the search of the canister was permissible as within the scope of the premises search warrant.

The discovery of the suspected cocaine in the film canister provided probable cause for the officer to arrest Hughes and the subsequent search of Hughes was justified pursuant to a valid arrest. *See, e.g., People v. Bischofberger*, 724 P.2d 660 (Colo.1986) (full search of arrestee's person is within permissible scope of search incident to valid arrest). The statement made voluntarily by Hughes at the time of the arrest is admissible because it was not made in response to police interrogation and was not the product of an unlawful arrest. *See People v. Pierson*, 670 P.2d 770 (Colo.1983) (statements made at defendant's own initiative, not in response to police questioning, were not obtained in violation of defendant's *Miranda* rights).

## V.

In conclusion, we hold that, under the totality of the circumstances, the discovery of the film canister during the pat-down search of Hughes was legitimately within the scope of a frisk for weapons. Because the police possessed a valid warrant to search the premises for cocaine and vessels containing cocaine and because Hughes was connected to the premises, the police were authorized to seize and open the canister. The order of suppression is reversed and the case is remanded to the trial court

for further proceedings consistent with this opinion.