The **PEOPLE** of the State of Colorado, Petitioner–Appellant, In the Interest of P.E.A., A Child, Appellee, and Concerning: M.A., Respondent–Appellee.

No. 87SA214.

Supreme Court of Colorado, En Banc.

April 25, 1988.

383

James F. Smith, Dist. Atty., Michael J. Milne, Deputy Dist. Atty., Brighton, for petitioner-appellant.

Joseph G. Sandoval, Denver, for appellee P.E.A.

Juan R. Garcia, Denver, for amicus curiae American Civil Liberties Union of Colorado.

ERICKSON, Justice.

This is an interlocutory appeal pursuant to C.A.R. 4.1. The district attorney has appealed from an order in a delinquency proceeding suppressing statements of P.E.A., a minor child, and the marijuana seized by school officials in the search of P.E.A.'s automobile. The trial court concluded that the evidence was obtained in violation of the standards of reasonableness established by *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (plurality opinion), and was therefore inadmissible under the fourth amendment. On appeal, the prosecution asserts that the trial court erred because: (1) P.E.A. consented to the search; (2) school officials did not act as agents of the police; (3) the search was reasonable under *New Jersey v. T.L.O.*; and (4) the exclusionary rule does not apply to unlawful searches by school

officials.[1] We reverse the suppression order and remand the case for further proceedings consistent with this opinion.

### I.

On September 19, 1986, Officer Eric Knopinski went to a junior high school to investigate the theft of a bicycle. He was told by a minor whom he questioned about the bicycle theft that two other minors, M.M. and F.M., had stolen a quantity of marijuana from a backyard; had dried, cured, and packaged it; and had taken it to Westminster High School that morning to sell to other students. It is conceded by the prosecution that the minor's statement did not provide Officer Knopinski with probable cause to arrest M.M. or F.M. Because of the exigencies tied to the distribution and sale of marijuana, he immediately went to Westminster High School and advised the assistant principal (principal) of the reported proposal to sell marijuana at the school. The principal asked Knopinski to remain at the school while he investigated the report.

The school's security officer was summoned by the principal and both F.M. and M.M. were removed from class and individually interrogated in separate rooms. They were required to empty their pockets, remove their shoes for examination, and submit to pat-down searches. Their lockers at the school were also searched. After the searches produced no evidence of drugs or other contraband, both F.M. and M.M. were asked how they got to school that day, and M.M. replied that F.M. was driven to school by P.E.A.

P.E.A. was then removed from class and taken to the principal's office. He was searched in the same manner as M.M. and F.M. When the searches failed to produce evidence of drugs, he was asked how he got to school that day. Initially, he told the principal that he had ridden the school bus. However, after further questioning, he admitted that he had driven his car to school. He stated that the principal then seized him by the arm and told him that his car had to be searched. The security officer took the keys that were found when P.E.A.'s pockets were emptied and led him to the parking lot. P.E.A. objected to the search of the car but was informed by the school officials that the car would be searched.

On the way to the car, the security officer asked P.E.A. if the vehicle contained anything illegal. He answered affirmatively but stated that the illegal substance belonged to F.M. Using P.E.A.'s keys to open the right front door of the car, the security officer found in the console drug paraphernalia and a substance that later proved to be marijuana. In the trunk, he discovered a duffel bag containing a large quantity of marijuana. P.E.A., F.M., and another minor were arrested and the car was impounded. Officer Knopinski was not present during the questioning of the students or during the searches of the students, their lockers, or P.E.A.'s car.

The principal and the security officer both testified that it was school practice when a report relating to illegal drugs was made to call the student to the principal's office, conduct a pat-down search, and search the student's pockets and his locker. In addition, the student's car would be searched if it was parked in the school lot. If a student objected, the school practice or policy was to contact the parents and ask them to come to the school. In its order, the trial court found that "the staff at Westminster High School conducts searches of persons, locker, and cars based upon reports from any source concerning drug possession.... [I]t is clear that [school officials] treat all reports, anonymous or otherwise, the same and conduct searches."

Delinquency charges were filed against P.E.A. in the District Court for Adams County and P.E.A. moved to suppress his statements and the physical evidence taken from his car. The principal, the security officer, the police officer, and P.E.A. testified at the suppression hearing. The trial

---

1. Since we conclude that the search was reasonable under *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), we do not determine whether P.E.A. consented to the search and whether the exclusionary rule applies to unlawful searches by school officials.

court granted the motion and ordered that the evidence be suppressed. The court held that P.E.A. did not voluntarily consent to the automobile search and that the search was unlawful because it did not comply with the standards set forth in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (plurality opinion). As an additional ground for suppressing the evidence, the court found that the school officials acted as agents of the police and conducted the search without probable cause.

## II.

The prosecution asserts that the trial court erred in finding that the principal and security officer acted as agents of the police when they detained P.E.A. and searched his car. The trial court found that Officer Knopinski supplied information to the principal with the intent to instigate an investigation by school officials. The court treated the interrogation and search by school officials as police conduct and found that the warrantless search of P.E.A.'s automobile was not supported by probable cause and violated the fourth amendment.[2] To determine whether the principal and security officer acted as agents of the police, we apply agency principles governing searches and seizures by those who are not law enforcement officers.[3]

A warrantless search or seizure is presumptively illegal and the prosecution has the burden of establishing that it falls within a recognized exception to the warrant requirement. *People v. Amato*, 193

Colo. 57, 562 P.2d 422 (1977); *People v. Alexander*, 193 Colo. 27, 561 P.2d 1263 (1977). The acquisition of evidence by an individual acting as an agent of the police must be reviewed by the same fourth amendment standards that govern law enforcement officials. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Chastain*, 733 P.2d 1206 (Colo.1987). The resolution of whether an individual becomes an agent of the police is determined by the totality of the circumstances. *Coolidge*, 403 U.S. at 487, 91 S.Ct. at 2048. The agency rule prevents police from circumventing the fourth amendment by having a private individual conduct a search or make a seizure that would be unlawful if performed by the police themselves. *Chastain*, 733 P.2d at 1214; *see United States v. West*, 453 F.2d 1351 (3d Cir.1972). The defendant has the burden of establishing that an individual has acted as a police agent. *United States v. Snowadzki*, 723 F.2d 1427 (9th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984).

In this case, the record does not support a finding that the principal and security officer acted as agents of the police. Officer Knopinski did not request or in any way participate in the searches or interrogations of the students. He testified that, though he remained on school grounds, he had no knowledge of the school's investigation. Knopinski's supplying information to the principal with the intent of initiating the search and his presence on school premises during the investigation do not establish that the principal and security officer acted as police agents.[4]

---

2. The trial court also found that school officials, as police agents, had violated section 19-2-102(3)(c)(I), 8B C.R.S. (1986). Section 19-2-102(3)(c)(I) requires that statements of a child be suppressed unless a parent or guardian is present and is advised of the child's *Miranda* rights. The statute requires interrogation by "law enforcement officials." Since we conclude that the principal and security officer did not act as agents of the police, the statute does not apply in this case.

3. Because we conclude that school officials acted independently of the police, we express no opinion on the appropriate standard for assessing the legality of school searches conducted by

school officials acting as agents of the police. *See New Jersey v. T.L.O.*, 469 U.S. 325, 341 n. 7, 105 S.Ct. 733, 743 n. 7, 83 L.Ed.2d 720 (1985) (declining to address the appropriate standard governing searches by school officials in conjunction with or at the behest of the police); *cf. Picha v. Wielgos*, 410 F.Supp. 1214, 1219-21 (N.D.Ill.1976) (holding probable cause standard applicable to searches involving the police).

4. P.E.A. does not claim and we do not address whether an agency relationship with the police may result from a school security officer participating in the search. *See generally,* Annotation *Admissibility, in Criminal Case, of Evidence Obtained by Search by Private Individual,* 36 A.L.R.

*See Cason v. Cook,* 810 F.2d 188 (8th Cir.) (vice-principal not acting at the behest of police where policewoman was present during vice-principal's investigation of thefts at school, conducted pat-down search of student, and briefly interviewed suspected students), *cert. denied,* —— U.S. ——, 107 S.Ct. 3217, 96 L.Ed.2d 704 (1987); *United States v. Jennings,* 653 F.2d 107 (4th Cir. 1981) (no governmental search even though federal drug agents relayed anonymous tip to airline security that certain woman would be sending illegal drugs from Chicago to Washington, D.C. and were present when drugs were discovered); *People v. Henderson,* 38 Colo.App. 308, 559 P.2d 1108 (1976) (mere presence of police officer, absent some form of participation in the search or seizure, does not establish agency relationship); *see also Smith v. State,* 267 Ark. 1138, 594 S.W.2d 255 (1980); *State v. Blackshear,* 14 Or.App. 247, 511 P.2d 1272 (1973); *see generally* W. LaFave, *Search and Seizure* § 1.8(c) (2d ed. 1987) (discussing factors required for agency relationship in searches or seizures by private persons). Accordingly, we reverse the trial court's finding that the principal and security officer acted as agents of the police.

### III.

■ The defendant claims that the trial court properly found that the school's investigation of P.E.A. violated the reasonableness standard set out in *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (plurality opinion). The trial court found no reasonable grounds to search P.E.A. because no marijuana was found as a result of the searches of M.M. and F.M. and their lockers. In the suppres-

sion order, the trial court concluded that the search of P.E.A. extended beyond the initial information given to the school officials.[5] The defendant claims that the sole evidence supporting the investigation of P.E.A. was the statement that M.M. and F.M. would be selling marijuana at the school on September 19, 1986, and M.M.'s declaration that P.E.A. drove F.M. to school. The prosecution contends that the questioning and the search of P.E.A. that culminated in the automobile search was supported by reasonable grounds since P.E.A. drove F.M. to school and admitted that there was an illegal substance in his car when he was taken to the school parking lot to have the car searched. We agree with the prosecution.

The focal issue in this case is whether P.E.A.'s fourth amendment rights were violated when school officials questioned and searched him, and then searched his car and seized marijuana that belonged to F.M. If the questioning which led to the search had been by law enforcement officials, the constitutionality of the search would be determined under the probable cause standard of the fourth amendment. Since the search was incidental to the maintenance of order by school officials and the protection of other students and was not performed by individuals acting as agents of the police, the prosecution maintains that the acts of the principal and security officer are to be governed by the standards set forth in *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733. We agree.

In *New Jersey v. T.L.O.,* T.L.O., a fourteen-year-old high school freshman, was discovered smoking cigarettes in the school lavatory, in violation of a school rule. In

3d 553, 567–71 (1971 & 1987 Supp.) (discussing treatment of search by private police or security officers).

5. In finding the search of P.E.A.'s car to be unconstitutional, the court stated:

The information related to [the principal] and [the school's security officer] from Officer [Knopinski] was that two other individuals *might* have marijuana at the high school. None was found on them or in their lockers. Nothing was related from the police officer about the child. Nothing was said to [the

principal] and [the security officer] by F.M. and M.M., as well as anyone else, that the Child was violating any laws or school rules. There was nothing here indicating any wrongdoing at all. It was apparently school policy to search everyone when information was received indicating possible drug possession. That search extended beyond the initial information here, and it is not inconceivable that other friends of F.M. and M.M. would also have been searched but for the marijuana having been found in the Child's car.

the vice principal's office, she denied that she had been smoking, or that she even smoked at all. When the vice principal demanded to see her purse, he discovered a package of cigarettes as well as cigarette rolling papers which he knew to be closely associated with the use of marijuana. In further searching the purse he found marijuana, a pipe, plastic bags, a substantial amount of money, index cards listing students who owed respondent money, and two letters that directly implicated the respondent in marijuana dealings. T.L.O. was subsequently taken to police headquarters where she confessed that she had been selling marijuana at school.

As a result of the evidence seized and the confession obtained from T.L.O., delinquency charges were filed in the juvenile and domestic relations court. T.L.O. moved to suppress the evidence found in her purse as well as her subsequent confession which, she argued, was obtained in violation of her fourth amendment rights. The juvenile court denied her motion. The New Jersey Supreme Court held the evidence should be suppressed because: (1) the contents of the respondent's purse had no bearing on the accusation that she had been smoking in the lavatory since the possession of cigarettes did not violate a school rule; (2) the search was not supported by reasonable suspicion; and (3) regardless of whether the initial search was justified at its inception, the subsequent extensive "rummaging" through respondent's personal papers and effects was not reasonable.

The United States Supreme Court granted certiorari to determine what limits, if any, the fourth amendment places on activities of school authorities. In a plurality opinion, Justice White affirmed in part and reversed in part, declaring that the fourth and fourteenth amendments prohibit unreasonable searches and seizures by state officers, *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), and that the fourteenth amendment protects the rights of students against encroachments by public school officials, *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). The Court held that the fourth amendment's prohibition against unreasonable searches and seizures applies to searches conducted not only by law enforcement officers but also by public school officials. The majority rejected New Jersey's argument that school officials are exempt from the dictates of the fourth amendment by virtue of their authority over school children, concluding that school officials act not merely as surrogates for the parents of students but as representatives of the state and are compelled to afford students the protection of the fourth amendment.

Justice White stated that the fourth amendment protects against unreasonable searches and seizures and that to determine reasonableness the need to search must be balanced against the invasion that the search entails. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed. 2d 930 (1967). The fourth amendment, however, does not protect subjective expectations of privacy that are unreasonable, or otherwise illegitimate. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). School children have a legitimate expectation of privacy, because they carry noncontraband as well as highly personal items with them on school grounds.

The student's expectation of privacy, the Court said, is balanced against the "substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds," *New Jersey v. T.L.O.,* 469 U.S. at 339, 105 S.Ct. at 741, and the school's "legitimate need to maintain an environment in which learning can take place," *id.* at 340, 105 S.Ct. at 742. "It is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *Id.* Accordingly, the warrant requirement is not suited for the school environment and is not applicable to searches of school children. Justice White stated that the school setting requires a modification of the level of suspicion of illicit activity needed to justify a search. Relying on other cases in which the legality of a search and seizure was based on suspi-

cion that, though reasonable, does not rise to the level of probable cause, *e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the majority held that the interests of school officials in maintaining order in schools is best served by applying a fourth amendment standard of reasonableness rather than one of probable cause.

■ Justice White set forth a two-prong test to determine the legality of school searches:

> [T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception"; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place."

*New Jersey v. T.L.O.*, 469 U.S. at 341, 105 S.Ct. at 742–43 (citation omitted). Ordinarily the search of a student will be justified at its inception where there are reasonable grounds for suspecting that the search will uncover evidence that the student has or is violating either the law or the rules of the school. "Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." [6] *New Jersey v. T.L.O.*, 469 U.S. at 342, 105 S.Ct. at 743. Accordingly, since the vice principal had a reasonable suspicion that a search of the respondent's purse would reveal evidence of the smoking infraction, the initial search was justified. The intrusiveness of the subsequent search was justified because it was reasonably related in scope to the purpose of the initial intrusion.

Before applying the first prong of the *T.L.O.* test to the facts of this case, we must determine what considerations support a finding that a search is "justified at its inception." In *T.L.O.*, Justice White, while noting that "some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure," did not decide whether particularized suspicion is an essential element of the *T.L.O.* standard of reasonableness. *New Jersey v. T.L.O.*, 469 U.S. at 342 n. 8, 105 S.Ct. at 743 n. 8. In *People v. Wells*, 676 P.2d 698, 701 (Colo.1984), we discussed "reasonable suspicion" in the context of investigative stops:

> A subjective and unarticulated hunch of criminal activity will not support the "reasonable suspicion" necessary for an investigatory stop. On the contrary, "[t]he reasonable suspicion necessary for an investigative stop must be judged against an objective standard—that is, whether there were specific and articulable facts known to the officer, which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security."

(quoting *People v. Thomas*, 660 P.2d 1272 (Colo.1983)) (citations omitted); *e.g., People v. Savage*, 698 P.2d 1330 (Colo.1985); *People v. Bell*, 698 P.2d 269 (Colo.1985); *People v. Cobbin*, 692 P.2d 1069 (Colo.1984); *see Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see generally* W. LaFave, Search and Seizure § 9.3(a) (1987) (discussing grounds for investigative stops of individuals under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868). As

---

**6.** The broad discretion in establishing and maintaining school discipline accorded school officials by *New Jersey v. T.L.O.* is not unbounded. Constitutional rights guaranteed to minors under the fourteenth amendment must be protected. *See Hazelwood School Dist. v. Kuhlmeier*, — U.S. ——, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *New Jersey v. T.L.O.*, 469 U.S. 325, 105

S.Ct. 733; *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

defined in *Wells*, reasonable suspicion is a less demanding standard than probable cause. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868.

█ In our view, the standard set forth in *Wells* applies under the facts of this case in determining whether a search under *T.L.O.* is "justified at its inception." [7] Under *Wells*, we conclude that the search of P.E.A.'s car was justified at its inception. Officer Knopinski informed the principal and security officer that, according to another minor, M.M. and F.M. had brought marijuana to school that morning to sell to other students. Based on the information provided by Officer Knopinski, school officials had reasonable suspicion to question M.M. and F.M. and could act on reasonable inferences emanating from their investigation. *See People v. Cagle*, 688 P.2d 718, 721 n. 9 (Colo.1984) (articulable and specific basis for an investigatory stop need not include articulable and specific basis for search prior to stop; the basis for search may develop in course of stop).

After the investigation of M.M. and F.M., the principal and security officer determined that the marijuana was not in the possession of M.M. and F.M. or in the students' lockers at school. They decided to investigate P.E.A. only after they learned that M.M. had taken the bus to school and that P.E.A. had driven F.M. to

school. Considering the limited ways the students could have transported the marijuana to school and concealed it on school grounds and the magnitude of the threat of having the marijuana sold and distributed at the school, *see New Jersey v. T.L.O.*, 469 U.S. at 339, 105 S.Ct. at 741, the connection between P.E.A. and F.M. establishes the articulable facts and concomitant rational inferences necessary to create a reasonable suspicion that P.E.A. possessed drugs or other contraband.[8] "[R]easonable suspicion is not a requirement of absolute certainty" but is "the sort of 'common-sense conclusio[n] about human behavior' upon which 'practical people'—including government officials—are entitled to rely." *Id.* at 346, 105 S.Ct. at 745 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).[9]

With respect to the second prong of *T.L.O.*, the record establishes that the scope of the searches conducted by the principal and security officer was not unreasonable. In view of the substantial state interests triggered by the contemplated sale of marijuana to other students, the measures taken by school officials in searching P.E.A., his locker, and his car, which provided the means for transporting the marijuana to the school and for concealing the contraband, were reasonably relat-

---

**7.** Our General Assembly has imposed restraints on police questioning and searching of minors outside the presence of their parents.

Section 19–2–210(1), 8B C.R.S. (1987 Supp.), provides:

No statements or admissions of a juvenile made as a result of the interrogation of such juvenile by a law enforcement official concerning delinquent acts alleged to have been committed by the juvenile shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation and the juvenile and his parent, guardian, or legal or physical custodian were advised of the juvenile's right to remain silent and that any statements made may be used against him in a court of law, of his right to the presence of an attorney during such interrogation, and of his right to have counsel appointed if he so requests at the time of the interrogation; except that, if a public defender or counsel representing the juvenile is present at such interrogation, such statements or admissions may be admissible in evidence

even though the juvenile's parent, guardian, or legal or physical custodian was not present.

**8.** P.E.A. testified that when he was questioned he first denied that he had driven to school that day. The denial, followed by the admission that he drove to school, gives rise to an inference that P.E.A. was involved with F.M.

**9.** *See Jones v. Latexo Indep. School Dist.*, 499 F.Supp. 223 (E.D.Tex.1980) (use of sniffer dogs to search students' cars unconstitutional); *see also* Annotation, *Admissibility, in Criminal Case, of Evidence Obtained by Search Conducted by School Official or Teacher*, 49 A.L.R.3d 978, 992–99 (1973 & 1987 Supp.) (discussing standards applicable to different types of school searches). *But see Horton v. Goose Creek Indep. School Dist.*, 693 F.2d 524 (5th Cir.1982) (reasonable suspicion is appropriate standard for searching student's locker or car), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

ed to the objectives of the search and not excessively intrusive.[10]

Accordingly, the trial court's suppression order is reversed and the case is remanded for further proceedings consistent with this opinion.

---

10. In identifying the school's interest, the Court noted that "[m]aintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems." *New Jersey v. T.L.O.*, 469 U.S. 325, 339, 105 S.Ct. 733, 741, 83 L.Ed.2d 720 (1985).