Brent C. SHAMBERG, Appellant,

v.

STATE of Alaska, Appellee.

No. A-2212.

Court of Appeals of Alaska.

Oct. 14, 1988.

Janet L. Crepps, Gilmore & Feldman, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

A grand jury indicted Brent C. Shamberg on May 13, 1987, on one count of misconduct involving a controlled substance in the third degree, AS 11.71.030(a)(3), and one count of minor consuming alcohol, AS 04.-16.050. The charge of misconduct involving a controlled substance was based on two grams of cocaine found in the ashtray of Shamberg's car while it was parked on the grounds of Service High School in Anchorage. Superior Court Judge Mark C. Rowland held an evidentiary hearing and denied Shamberg's motion to suppress the evidence of the cocaine. Shamberg entered pleas of no contest to both counts, reserving his right to appeal the denial of the motion to suppress. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). Shamberg now appeals the denial of his motion to suppress the cocaine. We affirm.

## FACTS

On April 7, 1987, Chris Hooten, the assistant principal in charge of discipline at Service High School, informed Matthew Nolan, the "safety/security home-school coordinator" for Service High School, that a teacher in the high school library had informed him of a problem within the library. Specifically, the teacher believed that a student was under the influence of alcohol. Nolan proceeded to the library, where the teacher pointed out Brent Shamberg to him. Nolan asked Shamberg to come to a small storeroom with him so he could talk to him. He noticed that Shamberg's eyes were glassy and his face was flushed. As they walked to the storeroom, he observed Shamberg bouncing into large objects and swaying as he walked. After they were in the storeroom, Nolan detected an odor of alcohol on Shamberg and also noticed that Shamberg's speech was slightly slurred.

Nolan told Shamberg that he believed he had been drinking and wanted to know where Shamberg had gone for lunch. According to Nolan, Shamberg was evasive regarding his whereabouts during the lunch period. He would not state who he was with, and was equivocal in his responses to Nolan's inquires as to whether he drove his car. When Shamberg refused to turn over his keys to Nolan, Nolan contacted Hooten, the assistant principal. Shamberg surrendered his car keys to Hooten and all three of them proceeded to Hooten's office. In Hooten's office, Nolan told Shamberg that they knew he had been drinking and that they wanted to search his car. Nolan handed Shamberg a consent form and told him to sign it. After some discussion, Shamberg signed the form, indicating that he consented.

Shamberg, Hooten, and Nolan then went outside to Shamberg's car, which was parked improperly in the driveway of the west parking lot. Hooten gave Nolan the keys, and Nolan proceeded to search the car. He searched under the seats, under the dashboard, in the glove compartment, and in the ashtray. He found two baggies, both containing a white powdery substance, in the ashtray. Shamberg appeared distressed, and indicated that the bags contained cocaine. Chemical tests subsequently showed that the substance was cocaine.

Shamberg filed a motion to suppress evidence of the cocaine, arguing that the consent was not voluntary and that the search violated Shamberg's constitutional rights under *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Judge Rowland held an evidentiary hearing, at which Nolan testified to the facts presented here. He also testified that he felt that Shamberg was under the influence of more than just alcohol because he did not believe that Shamberg could have consumed enough alcohol to "stagger around

and bump into things and this sort of thing" in the forty-minute lunch period.

Judge Rowland found that Shamberg had not given his consent freely and voluntarily. Therefore, the consent form did not justify the search. Nevertheless, Judge Rowland found that the search was justified under the test set forth in *T.L.O.* He found that the search was justified at its inception because of the defendant's state of intoxication and because the defendant's automobile was improperly parked on school grounds. He also considered the school's responsibility to secure evidence, to enforce school rules, and to protect other students. Judge Rowland further found that the search was reasonably related in scope to the circumstances which initially justified the search. He reasoned that Nolan had a right to search the vehicle for alcohol and for other intoxicating substances, including cocaine, which may have contributed to Shamberg's state of intoxication. Therefore, he found ·that the search was justified at its inception and was not beyond the scope of the original justification, as required under *T.L.O.*

## DISCUSSION

In *T.L.O.*, the United States Supreme Court addressed the application of the fourth amendment to a search of a student's purse by an assistant principal. A teacher had discovered the student smoking cigarettes in the girls' restroom, in violation of a school rule. The student denied smoking, and the vice principal demanded that she open her purse. He found a pack of cigarettes and noticed a pack of rolling papers in the purse. Suspecting that the rolling papers were for the use of marijuana, the vice principal proceeded to thoroughly search the purse. 469 U.S. at 328, 105 S.Ct. at 735. He found marijuana, a pipe, empty plastic bags, a list of students who owed the student money, two letters implying that she sold marijuana, and a large number of one dollar bills. *Id.*

The Court held that the fourth amendment applied to school officials, but that the search did not violate the fourth amendment. In a plurality opinion authored by Justice White, the Court formulated a two-prong test to apply the fourth amendment to searches by school officials. Rejecting the need for a warrant or probable cause to search a student, the Court held that a search need only be reasonable. To satisfy the reasonableness requirement, the search must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 341–42, 105 S.Ct. at 742–43 (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). The Court stated that:

> Although the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search takes place. The determination of the standard of reasonableness governing any specific class of searches requires "balancing the need to search against the invasion which the search entails." On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of the public order.

469 U.S. at 337, 105 S.Ct. at 740 (citation omitted).

The plurality recognized that students do have legitimate expectations of privacy, which must be balanced against "the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds." *Id.* at 339, 105 S.Ct. at 741. It noted that the first prong, whether the search was justified at its inception, is satisfied if the school teacher or official has "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."[1] *Id.* at 341–42, 105 S.Ct. at 742–

---

1. Justice Stevens, in a dissenting opinion joined by Justice Marshall and in part by Justice Brennan, criticized the plurality's standard for determining whether a search is justified at its inception because such a standard allows school officials to search students for trivial infractions of

43. It further noted that the measures adopted should be "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.*

The Colorado Supreme Court has applied the *T.L.O.* standard to a search of a student's car on school grounds by a school security officer. The court upheld a search for marijuana in a student's trunk, reversing the trial court's determination that the probable cause standard applied. *In re P.E.A.*, 754 P.2d 382 (Colo.1988). The search was predicated by a police officer's report to the high school principal that a minor had informed the officer that two students, F.M. and M.M., had prepared marijuana for sale that day in the high school. The principal questioned and searched the named students and inquired how they got to school. One student responded that P.E.A. had driven the other student to school. The principal and school security officer thereafter searched and questioned P.E.A., who eventually admitted to driving to school that morning. The school officials then proceeded to P.E.A.'s car with him to search it. On the way to the car, the security officer asked P.E.A. if there were any illegal substances in his car. P.E.A. admitted that there were, but claimed that the illegal substances belonged to F.M. The security officer found marijuana in the car, and a large duffel bag of marijuana in the trunk. During this entire scenario, the police officer remained at the school but did not participate in the questioning or search.

The trial court found that the evidence of marijuana should be suppressed because the search was not supported by reasonable suspicion as there was no consent to the search, and because the security officer and principal were acting as agents of the police when they questioned P.E.A. and searched his car.

The Colorado Supreme Court rejected the trial court's finding that the search was not justified under *T.L.O.*, although it recognized that the reasonable suspicion standard applied in *T.L.O.* required more than a "hunch of criminal activity." *Id.* at 388 (quoting *People v. Wells*, 676 P.2d 698, 701 (Colo.1984)). The court compared the factual situation to an investigative stop, for which a reasonable suspicion of criminal activity is also required to justify a search. It pointed out that grounds for a more intensive search may develop after the initial investigatory stop. *Id.* *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Cagle*, 688 P.2d 718 (Colo.1984). The court, therefore, reasoned that because the initial questioning of F.M. and M.M. was justified by the informant's report, the grounds to search P.E.A. could be based on the results of that questioning. *P.E.A.*, 754 P.2d at 389. *See* W. LaFave, *Search and Seizure* § 10.11(b) at 174–75 (1987) (product of initial search provided justification for further search in *T.L.O.*). The court also considered P.E.A.'s admission en route to the car in evaluating the reasonableness of the search. Thus, the court found that, based on all the evidence known to them at the time of the search, the school officials had a reasonable suspicion that there was marijuana in P.E.A.'s car. 754 P.2d at 389.

The court held that the second prong of *T.L.O.* was met because the search was reasonable in relation to the gravity of the state interest in controlling drug use in the

school rules. 469 U.S. at 377, 105 S.Ct. at 762. Stevens proposed a standard which would allow searches only when school officials have "reason to believe that the search will uncover *evidence that the student is violating the law or engaging in conduct that is seriously disruptive of school order, or the educational process.*" *Id.* at 378, 105 S.Ct. at 762. He posited that the logic of this distinction is "almost too clear for argument." *Id.* at 380, 105 S.Ct. at 763. Although the plurality stated that "the nature of the infraction" must be considered in the balancing process, Stevens noted that the nature of the infraction here, smoking in the girls' room, was not considered in the analysis. In Shamberg's case, the violation would meet Stevens' standard, as well as the plurality's, inasmuch as alcohol consumption by a minor and possession of cocaine are criminal violations and Shamberg's presence in a school building in an intoxicated condition could be found to be seriously disruptive of school order or the educational process.

school. The court found that the suspicion that the marijuana was to be sold to high school students justified the intrusiveness of the search of P.E.A.'s person, locker, and car. *Id.* Thus, the search was not barred by the fourth amendment under *T.L.O.*

The California Supreme Court has also applied *T.L.O.*, holding that a principal did not have a reasonable suspicion to search a student after the principal observed the student attempt to conceal a calculator case as he approached the student. *In re William G.*, 40 Cal.3d 550, 221 Cal.Rptr. 118, 709 P.2d 1287 (1985). The principal approached the student to ask him why he was not in class, and asked him what he had in his hand. The student replied, "nothing." The principal brought the student to his office and eventually, after forcing the case away from the student, found marijuana in it. He called the police, and the student was arrested. The juvenile court denied his motion to suppress the evidence. The California Supreme Court rejected the defendant's contention that a probable cause standard should apply to searches by a principal, and instead applied the standard enunciated in *T.L.O.* The court found that the student's "furtive gestures" in attempting to hide the calculator case did not provide sufficient cause to search under this standard.

The question of whether the search of Shamberg's ashtray was reasonable is a mixed question of law and fact. We review the trial court's factual findings to determine if they were clearly erroneous. *State v. Ridgely*, 732 P.2d 550, 554 (Alaska 1987). We then review the entire record and make an independent determination of whether the search was reasonable. *Id.*

■ The evidence presented to Judge Rowland indicated that when Shamberg was first observed by school officials, he was extremely intoxicated. His speech was slurred, his eyes were glassy, and he could not maintain his balance. In addition, the evidence showed that Shamberg's car was improperly parked on school grounds and that he was evasive about whether he had driven his car during the

preceding lunch hour. Judge Rowland had sufficient evidence to find that Shamberg was intoxicated and had arrived at the school in his car in that condition.

In *T.L.O.*, the Supreme Court cautioned that the "requirement of reasonable suspicion is not a requirement of absolute certainty." *T.L.O.*, 469 U.S. at 346, 105 S.Ct. at 745. Neither is it "an 'inchoate and unparticularized suspicion or "hunch." ' " *Id.* (quoting *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883). It is instead a " 'common-sense conclusio[n] about human behavior' upon which 'practical people'—including government officials—are entitled to rely." *Id.*

Unlike the principal in *William G.*, Nolan did have "knowledge or information" linking Shamberg to the use or possession of contraband. Nolan knew that Shamberg was under the influence of some intoxicant. The evidence of improper parking, Shamberg's intoxication, and Shamberg's evasive responses regarding his car could lead Nolan to the "common-sense conclusion" that Shamberg had been consuming or transporting alcohol or drugs in his car. Therefore, Judge Rowland did not err in concluding that Nolan had a reasonable suspicion to search Shamberg for drugs or alcohol.

■ The next question is whether the reasonable suspicion justified a search of Shamberg's ashtray. Shamberg argues that there was no justification for searching his ashtray because, although Nolan had reason to believe he was under the influence of alcohol, Nolan did not have reason to believe that he was in possession of drugs. Because an alcohol container would not fit into an ashtray, he argues that the justification for the search does not extend to the ashtray. Nolan testified, however, that he suspected that Shamberg may have been under the influence of other drugs in addition to alcohol. The basis for his suspicion was the degree of Shamberg's impairment and the short length of the lunch period. He did not believe that Shamberg could have ingested enough alcohol in forty minutes to reach that level of intoxication. Judge Rowland found that

Nolan's suspicion was well founded, and that Nolan was authorized to search for illegal drugs as well as for alcohol. The evidence of Shamberg's drug or alcohol use supported a reasonable suspicion that the ashtray was the repository for drugs. Judge Rowland did not err in concluding that the scope of the search extended to the ashtray.

 Shamberg also argues, for the first time on appeal, that the search by a school security officer violated his constitutional rights under the Alaska Constitution. Alaska Const. art. 1, §§ 14, 22. He argues that a more stringent standard should apply to searches by school security officers under the Alaska Constitution than under the United States Constitution. *Compare Bell v. State,* 519 P.2d 804 (Alaska 1974) (search by airport security guard must be supported by probable cause because of the guard's law enforcement duties) *with D.R.C. v. State,* 646 P.2d 252 (Alaska App. 1982) (school teachers and administrators not limited by constitutional prohibition against unreasonable searches and seizures because their function is education, not law enforcement).

The doctrine of *stare decisis* does not preclude this court from reconsidering its decision in *D.R.C.* in light of *T.L.O.* We decline, however, to address the issue on this record. Shamberg's motion to suppress addressed only the *T.L.O.* standard. Therefore, the state presented its evidence to establish only that a reasonable suspicion existed to justify the search. Shamberg argues that Nolan was in reality a security officer rather than a teacher or school administrator. In Shamberg's view, security officers should be forbidden to search students and their vehicles, unless probable cause exists to believe that the student has committed a crime. Shamberg's failure to raise this issue in the trial court prevented a full development of the relevant facts regarding the conditions of Nolan's employment and the customary duties he performed. Under the circumstances, we find the argument forfeited. *Stuart v. State,* 698 P.2d 1218, 1221 (Alaska App.1985).

The decision of the superior court is AFFIRMED.