The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Gilardo C. AGUILAR, Defendant–
Appellee.

No. 94SA446.

Supreme Court of Colorado,
En Banc.

June 5, 1995.

Edward J. Rodgers, Dist. Atty., Eleventh Judicial Dist., Canon City and Norman C. Cooling, Deputy Dist. Atty., Eleventh Judicial Dist., Salida, for plaintiff-appellant.

Harvey Kaplan, Denver, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The prosecution brings this interlocutory appeal from a district court order suppressing evidence seized after an allegedly illegal search without probable cause.

Gilardo Aguilar, the defendant, was charged by an information with possession of a controlled substance and possession of a controlled substance with intent to distribute, in violation of section 18–18–405(1), 8B C.R.S. (1986). Aguilar moved to suppress all evidence observed or collected from a search of his vehicle. The trial court granted the motion and suppressed all evidence seized from Aguilar's vehicle by a tow truck operator. The prosecution appeals the holding of the district court, arguing that the search was conducted by a private party, not by the government. Thus, the prosecution argues that Fourth Amendment protections are inapplicable and that the evidence should be admissible. We affirm the trial court's finding that the tow truck operator was acting as a police agent when he searched the vehicle. However, that finding is not dispositive with respect to the suppression motion. We re-

verse the suppression order and remand for reconsideration of the validity of the search.

## I.

On March 12, 1994, a police officer in Chaffee County contacted Aguilar because he was walking in a suspicious manner near a vehicle which another officer had stopped for a traffic offense.[1] The officer executed a patdown search of Aguilar. The officer then went to Aguilar's vehicle and observed a person pumping up a rear tire. Because the tire looked full and the person apparently pumping up the tire looked nervous, the officer asked Aguilar to produce identification. Aguilar entered his vehicle to obtain his identification. After an unsuccessful search, he did not produce any identification although he later identified himself verbally. The officer then determined that Aguilar's driver's license had been revoked and that there was an outstanding warrant for his arrest. As a result, Aguilar was placed under arrest.[2]

After Aguilar was taken into custody, a tow truck operator was called to remove Aguilar's vehicle from the highway to an impoundment lot. A police officer directed the tow truck operator to the vehicle. In addition to searching portions of the vehicle with the police officer, the tow truck operator noticed that the rubber gear shift boot was inverted inside the vehicle. The operator removed the boot and discovered a packet containing a white powdery substance, which later proved to be cocaine.

Aguilar filed a motion to suppress the cocaine found in the vehicle, arguing a violation of his state and federal constitutional rights. The district court held that the tow truck operator acted in concert with the police officer and conducted a search of Aguilar's vehicle. Because the officer had obtained neither Aguilar's consent nor a search warrant for the vehicle, the district court held that the search violated Aguilar's rights and suppressed the evidence.

## II.

■ The prosecution argues that the tow truck operator was not acting as an agent of the police at the time of the search. The trial court held:

Trooper Boccaccio [the police officer searching the vehicle] testified that [he] thought he noticed something suspicious when he observed a plastic protrusion to the tow truck operator. Although his suspicions were dispelled about the piece of plastic, the tow truck operator then went on to remove the rubber boot, which he (the tow truck operator), indeed thought was suspicious, as the trooper looked on. Although, the boot was not specifically removed at the troopers direction, it is clear to this Court, from the evidence, that both Trooper Boccaccio and the tow truck operator were acting together in determining the existence of anything suspicious. Thus, this Court concludes that there was a search.

.    .    .    .    .

The Court further finds that the testimony and evidence indicates that Boccaccio (the police officer) and the tow truck operator were acting together, albeit somewhat informally. Nevertheless, their actions constituted a search. The purpose of the search was to discover suspected contraband or materials of a suspicious nature.

When a civilian acts as an agent of the state, evidence obtained from an unlawful search must be suppressed. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). The "agency" rule prevents police from circumventing the Fourth Amendment by having a private individual conduct a search that would be unlawful if performed by the police themselves. *People v. Chastain*, 733 P.2d 1206, 1214 (Colo.1987). The resolution of whether an individual becomes such an "agent" of the police is determined by the totality of the circumstances. *Coolidge*, 403 U.S. at 487, 91 S.Ct. at 2048–49;

---

1. The stopped vehicle was driven by Aguilar's brother. From the record, it appears that the brothers were traveling together in separate vehicles.

2. There is no dispute that the defendant was properly stopped and properly arrested.

*People in Interest of P.E.A.*, 754 P.2d 382, 385 (Colo.1988).

■ In this case, the record supports the finding of the trial court. The record shows that the tow truck operator and the police officer carefully examined the vehicle, making numerous observations.[3] Although the tow truck operator had some autonomy with regard to the actual act of towing, the record reflects that the police officer had pointed out a strange ring protruding from the carpet and asked the tow truck operator to examine it. Shortly thereafter, the tow truck operator lifted the gear shift boot and discovered the cocaine. The trial court correctly found that the police officer, had he turned the gear shift boot over, would have performed a search. Thus, the tow truck operator, acting informally in concert with the police officer, conducted a search as an agent of the police.

### III.

The fact that the tow truck operator was a police agent for purposes of searching Aguilar's vehicle is not dispositive of the suppression issue.

■ The Fourth Amendment of the United States Constitution proscribes unreasonable searches and seizures by state officials. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *People v. Brewer*, 690 P.2d 860, 862 (Colo.1984). When the police make a lawful custodial arrest of the occupant of an automobile, however, the police may search the passenger compartment of that automobile. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *see also People v. McMillon*, 892 P.2d 879 (Colo. 1995). Similarly, police are permitted to search a lawfully arrested person and the area within the arrestee's immediate control. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *People v. Hufnagel*, 745 P.2d 242, 245–47 (Colo. 1987).

■ The trial court, however, did not evaluate the constitutionality of the search as a search incident to arrest. Accordingly, we vacate the suppression order and remand to the trial court for reconsideration of the search.

ERICKSON, J., specially concurs, and SCOTT, J., joins in the special concurrence.

Justice ERICKSON specially concurring:

I concur with the majority. I write separately, however, to provide the Chaffee County District Court with a framework for analyzing the validity of the search of Gilardo Aguilar's (defendant) vehicle.

### I

In its December 14, 1994, order the trial court made the following factual findings about the sequence of events that occurred from the time a police officer initiated contact with the defendant to the time he was arrested:

From [the November 23, 1994, evidentiary hearing] the following facts were established. On March 12, 1994, Officer Pinkston of the Chaffee County Sheriff's Department contacted the Defendant walking in a suspicious manner in the vicinity of another vehicle subject to a traffic stop. Officer Pinkston executed a patdown search of the Defendant. He then went to the Defendant's vehicle with the Defendant where he observed a person pumping a rear tire. According to the unrefuted testimony of the Officer, the tire being pumped looked full and the person pumping the tire looked nervous.

The Defendant was then asked to produce identification. He went into the vehicle and apparently made unsuccessful efforts to do so. He was then placed in another officer's vehicle. After the Defendant verbally identified himself, it was determined that his driver's license was revoked and that he was wanted on a warrant from the "front range." As a result he was placed under custodial arrest.

---

**3.** Some factual dispute exists as to whether the operator and the officer were taking inventory or conducting a search. The trial court held that the actions of the operator and officer were beyond mere inventory procedures.

After the defendant had been taken into custody, Trooper Boccaccio, from the Colorado State Patrol, and a tow truck operator who had been called to the scene, searched the defendant's vehicle and found cocaine. The defendant filed a motion to suppress the cocaine found in the vehicle.

## II

Warrantless searches are, because of the Fourth Amendment of the United States Constitution, per se unreasonable and "subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). An exception to the warrant requirement permits the police to search a lawfully arrested person and the area within the arrestee's immediate control. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). The exception is intended to provide police officers with the right to remove any weapons that the arrestee might use to harm the arresting officers and to prevent the destruction or concealment of evidence. *Id.*

The United States Supreme Court applied the search incident to arrest exception to automobile searches in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864 (footnotes omitted). The Court reasoned that the passenger compartment is "within the area into which an arrestee might reach in order to grab a weapon or evidentiary item." *Id.* (quoting *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040); *see United States v. Diaz–Lizaraza*, 981 F.2d 1216, 1222 (11th Cir.1993) (stating that the purposes of the search incident to arrest exception are to define the permissible scope of an automobile search incident to arrest).

*Belton* applies only when there has been a "lawful custodial arrest of the occupant of the vehicle." 3 Wayne R. LaFave, Search and Seizure § 7.1(b) at 5 (2d ed. 1987). *Chimel*, not *Belton*, applies when the arrestee was

not the driver or a passenger in the vehicle immediately before the arrest. *Id.* at 5–6; *see, e.g., United States v. Adams*, 26 F.3d 702, 705 (7th Cir.1994) (reasoning that *Chimel* was applicable and *Belton* inapplicable because the defendant was not an occupant of the vehicle immediately prior to his arrest, he was not linked to the vehicle until after he was detained and handcuffed, and he was in no position at the time of the arrest to remove weapons or evidence from the area searched); *United States v. Strahan*, 984 F.2d 155, 159 (6th Cir.1993) (stating that *Chimel* analysis applies to search of vehicle unless the police initiate contact with the defendant while the defendant is still in the vehicle); *United States v. Fafowora*, 865 F.2d 360, 362 (D.C.Cir.) (concluding that, because the *Belton* rationale is inapplicable when police initiate contact with a suspect outside of an automobile, the *Chimel* framework applies), *cert. denied*, 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989).

In undertaking a *Chimel* analysis, several factors must be considered in determining the area within the arrestee's immediate control: (1) whether the arrestee has been placed in some type of restraint; (2) the position of the defendant and the arresting officer in relation to the vehicle; (3) the ease or difficulty with which the arrestee may gain access to the vehicle; and (4) the number of officers present in relation to the number of arrestees. LaFave, § 7.1(b) at 6–8. The interior of a vehicle is not within the immediate control of an arrestee and the search incident to arrest doctrine does not apply when an arrestee is unable to gain access to the vehicle. *See, e.g., Strahan*, 984 F.2d at 159 (stating that interior of vehicle was not within the arrestee's immediate control because he was standing approximately thirty feet away from the vehicle when arrested); *United States v. Lugo*, 978 F.2d 631, 635 (10th Cir.1992) (determining that the purpose of search incident to arrest had "evaporated" and that the interior of the vehicle was not within the arrestee's immediate control because he was handcuffed and in the back seat of a patrol car being escorted away from the scene); *United States v. Vasey*, 834 F.2d 782, 787 (9th Cir.1987) (reason-

ing that a search, which took place between thirty and forty-five minutes after the defendant had been arrested, handcuffed, and placed in a police vehicle, was not a search incident to arrest); *State v. Brown,* 588 N.E.2d 113, 115–16 (Ohio 1992) (noting that, because the arrestee had been placed in a police cruiser, the contents of the automobile were not within his immediate control).

The trial court concluded that Trooper Boccaccio and a tow truck operator searched the defendant's vehicle. In evaluating the constitutionality of the search, the trial court determined that there was no probable cause to search the defendant's vehicle and that the search was not an inventory search. The trial court failed, however, to analyze the constitutionality of the search of the defendant's vehicle as a search incident to arrest.

Accordingly, I agree with the majority that the suppression order should be vacated and the case remanded to the trial court for reconsideration of the search.

SCOTT, J., joins in this special concurrence.