The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Stephen P. PILKINGTON, Defendant–Appellee.

No. 06SA327.

Supreme Court of Colorado, En Banc.

April 30, 2007.

Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Scheitler & Elio, P.C., Frank I. Scheitler, Denver, Colorado, Attorneys for Defendant–Appellee.

Justice EID delivered the Opinion of the Court.

Defendant Stephen P. Pilkington is charged with two felony counts of arson. At a pretrial hearing, the trial court ordered the suppression of evidence collected by an insurance investigator at the crime scene after determining that the investigator was acting as an agent of the government. We conclude otherwise and reverse the suppression order.

## I.

Pilkington was the owner of City View Liquors in Thornton. City View Liquors occupied a commercial building under a lease from the building's owner, Ed Ciancio. City View Liquors was insured by Travelers Insurance Company. The actual structure of the building was insured through Ciancio by EMC Insurance Company.

In the early morning hours of May 24, 2005, the Thornton Fire Department ("TFD") responded to a fire alarm from City View Liquors and arrived to find smoke coming from the building. Firefighters promptly extinguished the fire inside. Shortly thereafter, Pilkington arrived at the scene and consented to TFD's search of the premises. TFD searched the building and initially concluded that a faulty light fixture caused the fire.

Later that morning, David Harvey, a Travelers Insurance fire investigator, arrived at the scene. With Pilkington's verbal consent, Harvey began his investigation of the fire. Two hours later, Leon Beesley, a fire investigator for EMC Insurance, arrived and also began investigating the fire. There is no evidence in the record that Pilkington ever consented to Beesley's investigation. Harvey and Beesley both concluded that the fire had multiple points of origin, signifying arson as the cause. Beesley contacted TFD and suggested that it reconsider whether the fire was accidental.

TFD returned to the scene the following day and fire officials examined the building over the next several weeks. Beesley and Harvey also returned to the scene several times to investigate the fire. TFD allowed Beesley and Harvey to enter the scene and take photographs, measurements, and samples as part of their respective investigations. The record indicates that Beesely and Harvey conducted their investigations apart from the investigation conducted by TFD, although on occasion TFD allowed Beesley and Harvey to examine and take samples of evidence discovered by TFD. In addition, TFD allowed Beesley to take the building's hot water heater and portions of its electrical and mechanical systems for specialized testing. Beesley offered to share the results of the tests with TFD, which did not have the resources to conduct the testing itself. TFD

did not compensate Beesley or EMC Insurance for the testing.

TFD's investigation revealed additional evidence that the fire was deliberately set, and Pilkington subsequently was charged with two felony counts of arson. At a pretrial hearing, Pilkington moved to suppress the evidence gathered by TFD, Harvey, and Beesley on grounds that their respective searches of City View Liquors violated Pilkington's rights under the Fourth Amendment. Pilkington argued that Harvey and Beesley acted as agents of the government for purposes of the search and therefore were subject to the requirements of the Fourth Amendment. Harvey, along with two TFD investigators, testified at the suppression hearing. Beesley did not. Based on the evidence and testimony, the trial court denied Pilkington's motion to suppress the evidence gathered by TFD and Harvey, but ordered the suppression of all evidence produced as a result of Beesley's search. As grounds for suppression, the trial court noted that Pilkington consented to the initial searches conducted by TFD and Harvey, but never consented to Beesley's search of the fire scene.

In this interlocutory appeal of the trial court's suppression order, the People do not dispute that Beesley entered onto City View Liquors' premises without Pilkington's consent, and they do not argue that Beesley had an independent right to enter onto the premises. Instead, the People contend that the Fourth Amendment does not apply to Beesley's search because he was not acting as an agent of the government when collecting evidence at the scene. We agree with the People and reverse the trial court's suppression order.

## II.

The Fourth Amendment's guarantee of freedom from unreasonable searches and seizures "applies only to those searches and seizures conducted by state officials." *People v. Chastain,* 733 P.2d 1206, 1214 (Colo.1987) (citing, inter alia, *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). We have recognized, however, that "where civilians act as agents of the state, evidence obtained from an unlawful, privately conducted search must be suppressed." *Chastain,* 733 P.2d at 1214. This common-sense application of the Fourth Amendment prevents the government from "circumventing the requirements of the fourth amendment by directing a third party to perform a search that would be improper if the police did it themselves." *Id.* The defendant bears the burden of establishing agency. *See People in the Interest of P.E.A.,* 754 P.2d 382, 385 (Colo.1988).

We agree with the Tenth Circuit's observation that there are "two important inquiries" that aid in determining whether an individual is acting as an agent of the government: (1) whether the government "encourage[d], initiate[d], or instigate[d] the private action," and (2) whether "the party performing the search intended to assist law enforcement efforts or to further his own ends." *United States v. Smythe,* 84 F.3d 1240, 1242–43 (10th Cir.1996) (citing *Pleasant v. Lovell,* 876 F.2d 787 (10th Cir.1989)). On previous occasions this court has paid special attention to these factors when considering whether private actors are agents of the government.

In *Chastain,* for example, we held that a private security guard's seizure of a defendant was not the action of a government agent because the guard was not acting at the behest of the government and was not otherwise receiving instructions from state officials. *See* 733 P.2d at 1214. Similarly, in *P.E.A.,* we held that a school principal's search of a student's vehicle was not subject to the requirements of the Fourth Amendment because the mere presence of a police officer at the time of the search—even when the officer supplied information about the student to the principal—was not enough to establish an agency relationship. *See* 754 P.2d at 385–86. These cases are markedly different from a circumstance where the private actor has no reason to conduct a search other than to assist law enforcement officers. *See People v. Aguilar,* 897 P.2d 84, 86 (Colo. 1995) (determining that tow truck driver acted as agent of the government for Fourth Amendment purposes when he took directions from police officers while conducting search of a defendant's vehicle).

At their core, our prior decisions reveal that a private actor is not an agent of the government if she has her own purpose for conducting the search separate from assisting law enforcement and if she is not acting at the direction or behest of the government. *See Chastain*, 733 P.2d at 1214; *P.E.A.*, 754 P.2d at 385–86 (citing *Cason v. Cook*, 810 F.2d 188 (8th Cir.1987), for the proposition that agency cannot be established if private actor was not acting at behest of government). *Compare Aguilar*, 897 P.2d at 85 (finding agency relationship where tow-truck driver had no reason to search vehicle except at the suggestion of the police). While the agency relationship must be determined from the totality of the circumstances, *see P.E.A.*, 754 P.2d at 385, we have never held that an agency relationship exists where a defendant has not shown that the private actor lacked an independent motive to conduct the search or was affirmatively encouraged by the government.

Applying similar factors, courts in other jurisdictions have routinely recognized that insurance investigators have a motive to investigate an accident scene that is entirely separate from law enforcement's aims. *See United States v. Howard*, 752 F.2d 220, 228–29 (6th Cir.1985), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985), *vacated on other grounds*, 770 F.2d 57 (6th Cir. 1985) (holding that insurance investigators were not agents of the government for Fourth Amendment purposes because they had an independent reason to investigate the scene); *State v. Smith*, 40 Conn.App. 789, 673 A.2d 1149, 1157 (1996) (finding that insurance investigators were not state agents because they acted "at the behest of insurance companies," not the government); *Davis v. State*, 178 Ga.App. 760, 344 S.E.2d 730, 732 (1986) (same); *State v. McSwain*, 292 S.C. 206, 355 S.E.2d 540, 541 (1987) (same); *State v. Ellingsworth*, 966 P.2d 1220, 1224–25 (Utah App.1998) (same); *State v. Rogers*, 148 Wis.2d 243, 435 N.W.2d 275, 277 (App.Ct.1988) (same). As the court explained in *Smith*, the insurance investigator's motive is to determine whether the insurance company is liable; the government's investigation is to determine whether a crime has been committed and, if so, by whom. *See*

*Smith*, 673 A.2d at 1157. *See also Ellingsworth*, 966 P.2d at 1224–25 (emphasizing the separate motive of insurance investigators). These cases reaffirm our view that a private actor's independent motive to investigate creates a strong presumption that she is not an agent of the government, and therefore that the Fourth Amendment does not apply to her search.

Pilkington has not shown that Beesley's search of City View Liquors was motivated by anything other than the need to serve EMC Insurance, the company that insured the building occupied by City View Liquors. In addition, the record is devoid of any evidence suggesting that Beesley was directed by TFD when conducting his investigation. The existence of an independent motive and lack of directions from the government is fatal to Pilkington's claim that Beesley was acting as a state agent at the crime scene. *See Smythe*, 84 F.3d at 1243.

In fact, Pilkington's argument that Beesley's search is subject to the Fourth Amendment is based entirely on evidence that we previously have held to be insufficient to establish agency. Pilkington argues that the presence of TFD officials and their willingness to supply information to Beesley was part of a collaborative effort sufficient to establish agency. But we rejected an agency argument on nearly identical facts in *P.E.A.*, where we held that a police officer "supplying information to the [school] principal with the intent of initiating the search and his presence on school premises during the investigation [did] not establish that the principal and [school] security officer acted as police agents." 754 P.2d at 385.

Beyond motive, nothing in the record reveals that the government "encourage[d], initiate[d], or instigate[d]" Beesley's search. *Smythe*, 84 F.3d at 1243. Beesley's telephone call on May 24 alerting TFD of the possibility of arson and his subsequent offer to test evidence from the crime scene were entirely unsolicited. TFD merely accepted Beesley's assistance, and that is not enough to create an agency relationship. *See Chastain*, 733 P.2d at 1214 (holding that private

security guard's unsolicited call to police did not establish agency).

In sum, we conclude that the trial court erred by ordering the suppression of evidence gathered by Beesley. While the court focused on the question of consent, Pilkington failed to present sufficient evidence to show that Beesley was an agent of the government—and therefore subject to the Fourth Amendment—when conducting his search. Under similar circumstances where the trial court has erroneously applied the Fourth Amendment to private conduct, we have not hesitated to reverse the suppression order, *see P.E.A.*, 754 P.2d at 386, and we do so here.

**III.**

Pilkington's motion to suppress the evidence resulting from Beesley's search of the fire scene should have been denied. We reverse the trial court's order and remand with directions that the trial court vacate its order and deny Pilkington's motion to suppress.